FRED ALLEN HOWARD, APPELLANT, *v.* LOUISE ALICE HOWARD, RESPONDENT.

No. 3678

January 17, 1952. 239 P.2d 584.

*Hawkins & Cannon,* of Las Vegas, and *A. Brigham Rose,* of Los Angeles, Calif., for Appellant.

*Jones, Wiener & Jones,* of Las Vegas, for Respondent.

**OPINION**

By the Court, BADT, C. J.:

Louise Alice Howard obtained a judgment in the court

below setting aside a decree of divorce theretofore obtained in the same court by Fred Allen Howard, appellant. This appeal is from the judgment setting aside the divorce decree and from the order denying new trial. To avoid confusion, the parties are referred to by their given names.

Louise and Fred were married in 1912. Two sons and a daughter, all of whom have obtained their majority, were the issue of the marriage. Louise and Fred separated in 1925 or 1926, since which time they appear to have made litigation their chief avocation. In 1926 Fred returned with his three children, then minors, from a fishing trip and found his wife gone and the furniture sold. He commenced an action for divorce in Los Angeles but later dismissed it. In 1923 Louise had commenced an action in Los Angeles County, California, against Fred for divorce. She dismissed this action but immediately thereafter filed a second divorce action, which also sought to set aside a property settlement agreement alleged to have been obtained by fraud. This action was likewise dismissed by her.

In January, 1936, Louise commenced an action in the superior court of California, in and for the City and County of San Francisco, against Fred for separate maintenance. In that case the record indicates an order made in February, 1936, ordering Fred to pay Louise $50 a month alimony pendente lite. Arrears of several thousand dollars are said to have accrued and to remain unpaid under this order.

During the period of their separation Fred commenced an action against Louise to evict her from certain premises occupied by her. The details of this action are lacking, although it is indicated that it resulted in a judgment evicting her from the premises.

In 1924 or 1925 Fred obtained a Mexican divorce from Louise, but thereafter decided that the same was ineffective. On August 14, 1945, Fred married one Winifred Davis, and on November 10, 1949, he obtained an interlocutory decree of divorce from her in the superior court

of Los Angeles County, California, but the district court of appeal of that state on June 25, 1951, reversed the judgment for want of the plaintiff's compliance with the statutory requirement for corroboration. Howard v. Howard, 105 Cal.App.2d 126, 232 P.2d 530. Winifred also had a divorce action pending against Fred. The cited case affirmed the judgment denying her a divorce. After Louise discovered that Fred had married Winifred, Louise caused a criminal complaint to be filed against Fred, charging him with bigamy. She learned in 1945 that the bigamy charge had been dismissed by the California court upon submission to that court of Fred's decree of divorce from Louise — Fred's marriage to Winifred therefore appearing not to be bigamous. Fred filed his first Nevada action for divorce from Louise in the Eighth judicial district court, in and for Clark County, July 6, 1942, being action No. 14405. That action came on for trial on October 6, 1942 before Honorable George E. Marshall, then district judge of that court. At that time Judge Marshall cross-examined Fred with reference to the latter's knowledge of his wife's residence and his attempts to locate her for the purpose of service. Judge Marshall indicated considerable impatience with the conflicting answers given by the witness, and denied the decree on the ground that he had not made sufficient effort to locate Louise. On October 20, 1942, just 14 days after Judge Marshall denied the decree in Fred's action No. 14405, Fred filed another action in the same court, also seeking a divorce from Louise, being action No. 15266. Service was again ordered by publication, which was completed November 12, 1942, and no appearance was made by the defendant within 30 days after completion of that publication. The matter was however not called up for hearing before Honorable Geo. E. Marshall, the judge of the Eighth judicial district court, but was called up over three months thereafter on March 25, 1943, when Honorable Harry M. Watson, judge of the Seventh judicial district court in White Pine County, was occupying the bench temporarily in Clark County, on

which date the case was heard and a decree of divorce from Louise entered. Nothing appeared in the record that might have alerted Judge Watson to the former proceedings before Judge Marshall or to anything unusual or improper in the service by publication. On August 31, 1949, some six years and five months thereafter, Louise filed her complaint to set aside the judgment of divorce obtained by Fred, March 25, 1943. This was action No. 46173 in the Eighth judicial district court of Clark County, and was tried by Honorable A. S. Henderson on May 18 to 20, 1950. It was submitted on written briefs, and Judge Henderson on March 9, 1951 filed a written decision, pursuant to which findings and judgment setting aside the former divorce decree were filed on April 20, 1951. On the same date Fred's objections to Louise's proposed findings were overruled and his motion for new trial denied. The judgment setting aside the divorce decree ordered that Louise have to and including May 15, 1951 within which to serve and file her answer or otherwise plead to Fred's complaint for divorce. Louise failed to take advantage of this right, which she had continuously and consistently sought throughout the proceedings, her default was entered, and on September 15, 1951 Fred called up his divorce complaint for hearing (being in the same action, case No. 15266) in which his earlier decree of 1943 had been set aside by the judgment now being considered on appeal. On the last-named date, Honorable A. S. Henderson again presiding, a decree was entered granting Fred a divorce from Louise. In the meantime, on June 20, 1951, Fred had filed his notice of appeal from the judgment here involved which had set aside his 1943 divorce decree. Whether Judge Henderson knew on September 15, 1951 (when he granted Fred his divorce) that Fred had taken an appeal from Judge Henderson's judgment vacating Fred's decree granted by Judge Watson, and which appeal, if successful, would have left Fred with two divorce decrees in the same court against his wife on the identical cause of action and the identical statement of facts, does not appear. We are justified in

concluding that at this point, although Fred was in his appeal still insisting on the validity of his 1943 decree, both parties were entirely agreeable to the granting of Fred's 1951 decree.

If we should reverse the judgment now before us therefore, Fred will be left (at least as a matter of record) with his 1943 divorce and his 1951 divorce in the same court. If we affirm the judgment, he will have a divorce decree from Louise as of 1951 instead of as of 1943. What will happen to his divorce suit against Winifred, apparently still pending in California, is a matter for the consideration of the California courts. And whatever further litigation may spring from the fertile minds of the litigants in California, Nevada or elsewhere, or from the ingenuity of their several attorneys, is likewise a matter for conjecture.[1]

[1]Although both the record and the testimony are confusing, the litigation appears to include the following actions:

1. Fred's 1926 suit for divorce from Louise.
2. Louise's 1923 suit for divorce from Fred.
3. Louise's second 1923 suit for divorce from Fred.
4. Louise's 1926 suit for separate maintenance.
5. Fred's eviction suit against Louise.
6. Fred's Mexican divorce suit against Louise.
7. Fred's divorce suit against Winifred.
8. Winifred's divorce suit against Fred.
9. Louise's prosecution of Fred for bigamy.
10. Fred's first Las Vegas divorce suit against Louise. (Denied by Judge Marshall.)
11. Fred's second Las Vegas divorce suit against Louise. (Granted by Judge Watson.)
12. Fred's second Las Vegas divorce suit against Louise. (Granted by Judge Henderson.)
13. Louise's action to vacate Fred's Las Vegas decree.
14. (Pending) Fred's California divorce suit (on retrial after remand) against Winifred.
15. (Right asserted by Louise) Contemplated suit in California by Louise, for divorce and settlement of property rights.

It will be seen that Fred and Louise have been at bat about the same number of times, with Winifred occasionally pinch-hitting. Each may be credited with several hits and both are justly chargeable with many errors. The rules of the game have apparently meant nothing to either of them. To the infinite patience of the umpires must be credited the fact that both parties have not long since been sent to the showers.

When this action was tried and submitted to Judge Henderson in May, 1950, Judge Henderson was entirely justified in believing, and apparently did believe, that Louise desired and intended in good faith to appear and defend the divorce action if given an opportunity so to do. Her initial attack on Fred's divorce decree was by way of a motion in that suit to open up the default, set aside the judgment and permit her to answer and defend. Repeatedly in the notice of motion and the affidavit supporting the same she begged the court for leave to answer, stated that she had been fraudulently deprived of an opportunity to defend the action on the merits, that she had a valid defense and that if she had been served or notified she would have filed an answer and cross complaint. In connection with her motion, she submitted a proposed answer. Fred appeared specially to oppose the motion on the ground that more than six months, namely, some four years or more, had elapsed since the entry of the decree. The record does not clearly indicate what disposition was made of the motion, but it apparently either was abandoned or properly denied. Lauer v. District Court, 62 Nev. 78, 140 P.2d 953. In her complaint in the separate suit to set aside the decree, the case involved in this appeal, she again recites that she was fraudulently deprived of an opportunity to defend the action on the merits, and that had she had notice she would have filed an answer, and that she had a good and valid defense. As an exhibit, she attached a copy of her complaint for divorce against Fred in the superior court of Los Angeles County, California, verified June 15, 1923, charging extreme cruelty, with many detailed acts of cruelty set forth, and praying for a decree of divorce; also a copy of her second 1923 Los Angeles complaint alleging adultery as well as cruelty.

She annexed as an exhibit to her second divorce complaint in Los Angeles County, California, a property settlement agreement dated July 20, 1923, which purported to be "a full, final and complete settlement of all their

property rights," but which she maintained at that time was executed by her upon the representation of Fred that the bank required same before it would make a loan to him, which loan was necessary to supply funds for his apartment house business, and that Fred assured her at the time that the instrument would have no force or effect as between them.

In her answering brief in this court, Louise maintains in support of the judgment setting aside the divorce decree that by reason of Fred's false statements as to his knowledge of her residence, she was not notified of the pendency of the divorce proceeding and that she was otherwise precluded from the opportunity to present her defenses. Supporting Louise's complaint to set aside the divorce decree, she relies upon her allegations that she had a good and meritorious defense to Fred's divorce action, and that the record shows that she had in fact a good and meritorious defense; that she herself might have obtained a decree against the plaintiff on the ground of three years' separation if she had had an opportunity to defend; that she "now seeks nothing except her day in court"; that she should not be denied "the right to be heard in court." Elsewhere in her brief she is purposely vague, insisting that if her judgment setting aside Fred's decree is sustained, "then the entire matter as to grounds for divorce between the parties is reopened and can be litigated *in subsequent procedures.*" (Italics supplied.) In oral argument Louise's counsel insisted, while supporting the judgment setting aside Fred's divorce decree, that the trial court was in error in its provision that she be allowed certain time to appear, answer or otherwise plead to Fred's divorce complaint; that she had a right, by reason of Fred's false and fraudulent affidavit for publication, to have the divorce decree set aside, leaving her free to choose her own forum for prosecuting her own action for divorce and possibly for other forms of relief. These are apparently the "subsequent procedures" she now contemplates. This too apparently accounts for her refusal to exercise the right given to

her by the lower court at her own request to appear in the divorce action and defend the same. She tendered to the lower court no issue as to any demands for alimony and no issue as to a division of property rights. Under questioning by the court in her action to set aside the divorce decree, after stating that she would not again live with her husband if the court set aside his decree, she answered the court's inquiry as to why she wanted the decree set aside by saying: "I want a California divorce. I do not recognize this divorce because I think I have property rights. I wasn't consulted when—I was consulted when I was married and I think I should be consulted when I am divorced."

The written opinion of the trial judge recites Louise's averment that by reason of the fraudulent affidavit and resultant service by publication she was deprived of an opportunity to appear and defend, and that had she been served or notified of the pendency of the divorce action she would have filed an answer, and her further allegation that she had a good and valid defense. He held that the public interest required that a plaintiff seeking a divorce from an absent spouse "should be confined to the strictest rules and that leniency should be extended in granting an absent defendant *an opportunity to be heard.*" After signing findings to the effect that the affidavit for publication of summons was false and fraudulent, his conclusions of law were that Louise was entitled to judgment setting aside Fred's divorce decree "and permitting plaintiff herein [Louise] *to file an answer or otherwise plead to said complaint.*" This was followed by formal judgment setting aside the decree and giving Louise to May 15, 1951, "within which to file an answer or otherwise plead *to said complaint on file in action No. 15266.*"

The record shows that the findings of fact and conclusions of law above referred to were drawn and submitted by counsel for Fred, and we may assume that the formal judgment was likewise drawn by his attorneys.

Yet amazingly enough (although Louise took no cross

appeal) her attorney earnestly maintains that the trial court was in error, indeed that it had no jurisdiction, in the matter of its order permitting her to answer and defend the divorce action. During the course of the oral argument, members of this court directed the attention of Louise's counsel to the fact that she affirmatively sought such permission, that she represented to the district court that such was the primary purpose of her having the divorce decree set aside, that she had stoutly manifested the same purpose in her prior motion in the divorce suit to vacate the decree, that she developed and crystallized the same theory in the findings of fact, conclusions of law and judgment prepared and submitted to the trial judge by her own counsel and that she could have set up and litigated in the court below any question of alimony and property rights involved between the parties. Counsel's response was that even despite these circumstances, the court in the fraud action had no jurisdiction to make any orders governing Louise's appearance in the divorce action, and that Louise should be permitted to litigate all matters as to marital and property rights in the courts of California. Whether or not, as a matter of law, there is any merit to this contention, it was no less an imposition upon the trial court.

Nor is the attitude of Fred any less amazing. Fred's main concern in this appeal deals more with his probable relationship to Winifred than to Louise. Unless the judgment setting aside his divorce decree from Louise is reversed, it would follow that his 1945 marriage to Winifred was void. This, he asserts, would give her an undue advantage in asserting property rights as against Fred, though just how this would follow has not been explained. Apparently he would like a reversal of the judgment vacating his divorce from Louise, thus establishing that he had legally married Winifred, in order that he may again legally divorce Winifred. Counsel for Louise too state that there are important property rights to be determined as between her and Fred, but

just what they are and how they will be affected by our action has not been pointed out.

In view of this most bewildering situation, it is not surprising that at the oral argument the members of the court pressed counsel for some reasonable explanation as to just what either of the parties sought to accomplish. The responses of counsel simply added to the uncertainty and the confusion. This court will not take upon itself the task of measuring the degree or the extent to which either party has exceeded the other in imposing upon the trial court. It is enough that we make such disposition of the appeal as the record warrants.

Appellant's first eight assignments of error we find to be without merit. His ninth assignment is that Louise's action to set aside Fred's divorce decree on the ground of extrinsic fraud is barred by our statute of limitations reading in part: "Actions * * * can only be commenced as follows: * * * Within three years: * * * An action for relief on the ground of fraud or mistake; the cause of action in such case not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake." N.C.L., 1929, sec. 8524.

The fraudulent affidavit filed by Fred resulted in the entry of his divorce decree against Louise March 25, 1943. Louise alleges in her complaint simply that she did not discover the fraud till August 10, 1949. The learned district judge found this to be true and held that the statute did not commence to run until that date. He therefore apparently felt compelled to take cognizance of Louise's cause of action, and in this, we feel, overlooked some well-recognized principles of law particularly applicable to the facts of this case. It was obligatory on her affirmatively to excuse her failure to discover the fraud within three years after it took place by establishing facts showing that she was not negligent in failing to make the discovery sooner and that she had no

actual nor presumptive knowledge of facts sufficient to put her on inquiry. Hobart v. Hobart Estate Co., 26 Cal. 2d 412, 159 P.2d 958. Such has long been the rule in California under sec. 338 of its code of civil procedure from which the Nevada section was taken. This indeed is the general rule not only under similar statutes but in equity practice. See 54 C.J.S. 175, Limitations of Actions, sec. 184, id. 188, sec. 189, where it is said that knowledge by the defrauded person of facts which in the exercise of proper prudence and diligence would enable him to learn of the fraud is usually deemed equivalent to discovery.

In August, 1945, when Louise sought to press a bigamy complaint against Fred on account of the latter's marriage to Winifred, she discovered that Fred had divorced her (Louise) on March 25, 1943. She knew that this decree had been obtained in the Eighth judicial district court of the State of Nevada, in and for the county of Clark, sitting at Las Vegas, with the clerk's office in said city. She knew then that she had never been notified of the commencement or the pendency of such action. She knew, as she claims, that Fred knew at the time where she was living. She was no stranger to litigation and was no stranger to lawyers — both her own and adverse counsel. She waited until 1949, when it apparently suited her purposes, to send her Los Angeles attorney to Las Vegas to check the 1943 decree and the proceedings leading up to it. She had had knowledge of those proceedings continuously since 1945. The opportunity for checking them was as available in 1945 as it was in 1949. She makes no explanation and offers no excuse for the delay. The books are replete with cases holding, under much less convincing facts, that the statute of limitations commenced to run from the date of the discovery of facts which in the exercise of proper diligence would have enabled the plaintiff to learn of the fraud. The learned district judge commented that it was significant that at the time Louise learned

of the 1943 decree, she did not investigate the Nevada divorce, but he gave no effect to this significance, holding only that she did not discover the actual fraud perpetrated by the false affidavit for publication of summons until August, 1949, and that for that reason the statute did not commence to run until that date.

It is not necessary for us to determine whether or not the court, in order to purge its record of the fraud, might not have had the authority so to do despite the fact that Louise's action was barred by the statute. In Smith v. Smith, 68 Nev. 10, 226 P.2d 279, we approved the action of the same district court in purging its record of an order, fraudulently obtained, setting aside a prior divorce decree, although the matter was brought to the court's attention by complaint of a plaintiff whose actions were likewise tainted with fraud. We there refused to tie the hands of the court by the fraud of the person seeking the relief, holding that such person merely constituted the instrument which brought the fraud to the court's attention. However, we have no means of knowing whether the court would have so acted unless it felt compelled so to do upon Louise's complaint. We do know that the very purpose of the court's vacating of the 1943 decree obtained by Fred was to grant Louise's further prayer that she be permitted to appear in that action and defend it. We do know that the district court could not have had the slightest conception of the attitude or position that Louise would take in this court, namely, that although she asked leave of the district court to permit her to appear and defend the divorce action and stated many times that such was the purpose of desiring the vacating of the decree, the district court was in error in granting her request and had no authority to go any farther than to set aside the divorce decree. The learned district judge, though granting the relief sought by Louise, stated: "The court is not in sympathy with the motives of the plaintiff in bringing this action." We are aware of the rule accepted by this court in Nevada Con. Mining Co. v. Lewis, 34 Nev. 500, 126 P. 105, 111:

"A court of equity will not as a general rule set aside or enjoin the enforcement of a judgment regularly obtained by default in the absence of a showing of a good and meritorious defense to the original action.

"An exception to this rule appears to be recognized where fraud is practiced in the very matter of obtaining the judgment. In such cases the fraud is regarded as having been practiced on the court as well as upon the injured party. (Black on Judgments, sec. 321; 23 Cyc. 1025.)"

However, as we have seen, the district court was impressed throughout the entire proceedings with Louise's insistence that she had a good and meritorious defense and desired to press it in the divorce action itself. Although the court did set aside Fred's decree obtained by his false affidavit, it has up to this time had no opportunity to do anything about Louise's imposition upon it. One thing the court did do. It subsequently considered Fred's divorce complaint, in the same action, after Louise refused to appear and defend, and granted Fred his divorce—and that, during the pendency of the appeal to this court from the judgment vacating the divorce decree and which appeal was apparently never called to the district judge's attention.[2]

We do not find it necessary to speculate upon the courses of action that may still be open to the district court. Our holding is simply to the effect that Louise's action for fraud was barred by the statute of limitations, but that *the court* was, and by our present order still is,

[2]As part of the record on appeal there was filed in this court by stipulation of the parties a certified copy of the record in action No. 15266. Although this contains the reporter's transcript of the first divorce hearing (before Judge Watson) it does not contain the transcript of the second hearing (before Judge Henderson) or any of the clerk's minutes. Hence we do not know what transpired. The formal judgment of divorce recites that the court took judicial notice of its judgment setting aside the first divorce decree. It significantly omits any statement of notice or knowledge of the pendency of the appeal.

free to take such action as might seem appropriate under all the facts, with reference to the status of the fraudulent affidavit and the decree thereby obtained.

Reversed, and cause remanded to the district court for such further proceedings as to it in its discretion may seem proper in accordance with the views herein expressed. Each party will pay his own costs on this appeal.

EATHER and MERRILL, JJ., concur.