PIONEER TITLE INSURANCE & TRUST COM-
PANY, a California Corporation, Appellant, *v.*
STATE BAR OF NEVADA, a Public Corporation,
and Harvey D. Dickerson, Madison B. Graves,
E. P. Carville, Orville R. Wilson, James W.
Johnson, Jr., William J. Crowell, Douglas A.
Busey, Bryce Rhodes, Bruce Thompson, and
William W. Woodburn, as the Duly Elected,
Qualified and Acting Board of Governors of
the State Bar of Nevada, and Individually as
Attorneys-at-Law of the State Bar of Nevada,
and on Behalf of All Other Attorneys-at-Law
Duly Licensed to Practice Law in the State of
Nevada, Respondents.

No. 4039

June 6, 1958.                              326 P.2d 408.

*John S. Halley,* of Reno; *McNamee & McNamee,* of
Las Vegas, and *Allen C. McGurk,* of San Bernardino,
California, for Appellant.

*John W. Bonner, Ralston O. Hawkins, John F. Mendoza, Charles L. Garner,* and *Jack E. Butler,* all of Las Vegas, for Respondents.

## OPINION

By the Court, MERRILL, J.:

This is an appeal from an injunction against unauthorized practice of the law.

The State Bar of Nevada has proceeded against the Pioneer Title Company of Las Vegas charging that the company, in connection with its services as escrow agent in real estate sales, itself prepares all instruments necessary to effectuate such transactions. The trial court, finding in accordance with the position of the State Bar, has enjoined the title company from the preparation of such instruments. The instruments specified in the injunction are the following: "purchase and sale agreements for the purchase and sale of real and personal property, or both, deeds, notes, chattel mortgages, trust deeds, assignments, escrow agreements, escrow instructions, and bills of sale." The company also was enjoined from "directly or indirectly holding itself out to the public by offering to perform any of the services hereinabove described."

From this injunction the present appeal is taken by the title company. It contends that under the facts of the case its services in connection with the preparation of the instruments in question do not constitute unauthorized practice of the law.

The record discloses the procedure followed by the title company in the preparation of the instruments in question. In all cases the preparation of instruments was in connection with an escrow handled by the company and that escrow itself was in connection with an examination of title by the company. No separate charge was made for its services. For the purposes of our decision the following typical case may be regarded as establishing the practice which we must here examine.

An owner and a purchaser were brought to the title company office by their realtor. They had already agreed upon the terms for purchase and sale of residence property and their agreement was evidenced by an earnest money receipt. The parties, together with the realtor, conferred with an escrow officer. In response to his questions information was given by the parties as to the terms of their agreement. This information was taken down by the escrow officer upon a work sheet. When all necessary information had been secured, the work sheet was given to one of the company stenographers who typed it up on a printed form of escrow instructions. This was brought back to conference, checked by all present and signed by the parties. No request was made of the escrow officer for legal advice and no legal advice was given. (The company's employees have been instructed not to answer any questions upon matters of law, but to refer the parties to their attorneys as to all such matters.) The parties were advised that in order to carry out the transaction certain legal instruments would have to be prepared and signed by them: a deed, a bill of sale of personal property, a note for the unpaid balance of the purchase price, a trust deed and chattel mortgage to secure the note. They were asked whether either of them would prefer to have these instruments prepared by his own attorney. They were advised that if not, the documents would be prepared by the company stenographers and checked either by one of the parties' attorneys or by the company attorney, whichever way the parties wished it. The parties stated

that they would be satisfied to have the instruments pre-
pared by the company stenographers and checked by the
company attorney. The instruments were then prepared
by the company stenographers from printed forms which
have been in use by the company for many years and
which were themselves prepared by the company attor-
ney as suitable for use in such cases as this. The com-
pany attorney, as was his practice each day, came by
the company office. He picked up the file containing the
instruments involved in the case and checked them for
their legal sufficiency. He found them in order and made
no suggestions for changes.

We have concluded that while the procedures followed
by the title company for the most part are acceptable,
still the injunction must be affirmed. Since it appears
from our opinion which follows that the effect of the
injunction may be avoided by the company with but
minor changes in its established procedures, our decision
may seem to amount to a splitting of hairs. We do not so
regard it. Trivial though the refinements in procedure
may seem upon their face, the fact is that they are not
trivial for the principles which require them are of
considerable public importance. To compromise those
principles, in order to obtain what may seem a more
practical result, would be to place those principles in
jeopardy. This we do not choose to do.

The practice of law by others than members of the
State Bar of Nevada is forbidden by statute. NRS 7.600.
The reason is not the protection of the lawyer against
lay competition but the protection of the public.

The rights bestowed upon us by law are to an extent
the gauge of our freedom and of our civilized progress.
They must be prized as such and the reciprocal obliga-
tion to honor the rights of others must be respected.
Due respect for these rights and obligations requires
that at all times they be susceptible of definition. This
proposition lies at the very foundation of our system of
law. The public interest therefore requires that in the
securing of professional advice and assistance upon

matters affecting one's legal rights one must have assurance of competence and integrity and must enjoy freedom of full disclosure with complete confidence in the undivided allegiance of one's counsellor in the definition and assertion of the rights in question.

It is to meet the requirements of public interest that high standards of training and competence are fixed for those who would practice law and that they practice under a strict code of professional ethics and are made answerable to the courts as court officers for the manner in which they meet their professional obligations. The legal profession has, through acceptance of its obligations, traditionally become imbued with a spirit of public service.

The bench and bar may not lightly disregard these public obligations. Nor, in default of duty, may they casually permit the public to be led to rely upon the counselling, in matters of law, of persons not subject to the standards and discipline of the attorney as imposed by law for the public protection.

These principles must remain constant. The circumstances which call for creation of the attorney-client relationship are, however, subject to continuing change. As civilization becomes more complex we find that counselling becomes important in more and more new fields involving legal rights. Conversely we find that the public becomes accustomed to certain areas of transaction and that as transactions in those areas become standardized, legal counselling is no longer generally regarded as a practical necessity or a reasonable precaution. Contracts of insurance and of purchase and sale, the borrowing of money and the extension of credit all are now a familiar every-day experience to thousands of laymen. The nature of the rights and obligations thereby created have become familiar lay concepts. Furthermore, as the public in standardized areas of transaction, becomes familiar with the nature of the rights and obligations which are created, it becomes accustomed to the standardized form of the instruments involved. Custom serves to standardize both the rights and obligations and the form of instrument by which they are created.

The need for legal counselling in any transaction is a question which must be decided by the person whose legal rights are involved. If, in his judgment, he does not need advice as to his legal rights or assistance with respect to them, no one can complain of his self-reliance. Such a case must be a true case of *self*-reliance, however. If reliance be placed upon the judgment of *others* as to his legal rights, the case is different. If advice or judgment is professionally given by one not a party to the transaction and not an attorney, a problem in unauthorized practice is presented.

In the instant case it must be borne in mind that the title company has entered the picture after the parties have committed themselves to the terms of their agreement. This, so far as these litigants are concerned and so far as the record discloses, they have themselves chosen to do without the benefit of legal counsel. We are not here concerned, then, with the manner in which the parties have negotiated the terms of their transaction of purchase and sale. We are not concerned with the fact that in that negotiation they were not represented by counsel. We are, in this case, concerned solely with the drafting of the instruments by which their agreement has been effectuated.

The title company first contends that its services in connection with the drafting of the instruments did not constitute the practice of law for the reason that they were purely clerical. It emphasizes that the forms were standardized; that its services consisted solely in the filling in of blanks in standard printed forms such as could be obtained at any stationery store; that the services which it performed could as well have been performed by any competent public stenographer.

So far as the services performed by the escrow officer and the company stenographer are concerned, we are in agreement with the company's position. The drafting of the escrow instructions was but the recording of the parties' agreement as it was presented to the officer by the parties themselves. The officer did no more than ascertain the terms of the agreement. He did not guide it or suggest it or advise upon it. Nor did the selection of

the instruments to be used involve an exercise of legal judgment. The typical transaction has become so standardized that the type of instrument to all intents and purposes has become fixed by custom. The same is true of the form of instruments used. This is strengthened by the fact that these or similar forms have been used by this company for many years. The State Bar has not attacked the instruments as to form.

The difficulty with the company's position is that its services did not end with the clerical preparation of the instruments by the escrow officer and stenographer. It was the company itself which judged of the legal sufficiency of the instruments to accomplish the agreement of the parties. In the drafting of any instrument, simple or complex, this exercise of judgment distinguishes the legal from the clerical service. Title Guaranty Co. v. Denver Bar Association, 135 Colo. 423, 312 P.2d 1011; Clark v. Reardon, 231 Mo.App. 666, 104 S.W.2d 407.

We may note that notwithstanding the standardization of procedures, self-reliance upon questions involving one's legal rights in the acquisition of a home is not yet to be regarded as common. The average layman, in a transaction of such comparative importance to him, wishes the assurance of a competent adviser that all is properly in order.

This, then, was not a case of self-reliance. It is clear from the record that the company not only exercised its judgment in this regard but invited the parties to rely on it. It is clear that there was such reliance. The parties were assured that the transaction in all respects would be legally effective; that the company would see to that. This assurance appears not only from testimony as to the procedure followed but also from evidence of television advertising employed by the company.

It is no escape that the company, through its obligations as insurer, might well be liable for lack of legality with respect to title. This does not resolve the case into one of the company acting for itself. It is one thing to pass judgment for others as to the legality of their transaction. It is quite another to indemnify them against loss

through failure of legality. Insurance may well be reassuring; but it is no complete substitute for legality. The parties wish to avoid all legal trouble; even trouble with their insurer. They wish peaceful legality and not a monetary substitute.

As to any independent obligations the company may have had as escrow holder, we may simply note that one may not legitimatize his otherwise unlawful practice of the law by contractually obligating himself to achieve legal effectiveness. This is but a contract to pass legal judgment; that is, a contract to practice law.

In the instant case judgment as to legal sufficiency was, it is true, made by an attorney. The problem of lack of competence is not, therefore, present. We are, however, still faced with a complete lack of the essential attorney-client relationship in connection with the legal rights of the parties. The company attorney's concern with the legality of the instruments was from the point of view of the company's rights and obligations and not from the point of view of the rights and obligations of the parties to the transaction. The attorney was not advised that he was to serve as attorney for the parties and was to examine the instruments with an eye to the legal rights of those parties as his own clients independent of the company. Had this been done, in the light of the parties' apparent consent that the company attorney act as their own attorney and in the absence of any conflict of interest in the drafting of the instruments, the case might well be different.

It was the company, then, with the assistance and advice of its attorney, which was judging of the legal sufficiency of the instruments to accomplish the wishes of the parties. This constituted the practice of law. Title Guaranty Co. v. Denver Bar Association, supra; Clark v. Reardon, supra.

This does not, however, apply to the escrow instructions. No judgment as to legal effectiveness was there involved. The services rendered were purely clerical. Further, as the company points out on this appeal, there is no evidence that the company prepared any purchase

and sale agreements or escrow agreements, other than through the instructions themselves. To the contrary, the record would support the conclusion that they did not prepare such agreements. As to deeds, notes, chattel mortgages, trust deeds, assignments and bills of sale, however, the company was engaged in the practice of law through the exercise of its judgment, on behalf of the parties to the transaction, as to the legal sufficiency of the instruments to accomplish the wishes of the parties.

The company next contends that since the legal services performed were simple rather than complex and were incidental to its business, its conduct should not be held to be unlawful. Many authorities are cited in support of this contention, all of which have had our careful study.

It may be conceded that professional advice or exercise of judgment upon matters of law by one neither a party to the transaction nor an attorney, does not in every case constitute unauthorized practice of the law. There are recognized exceptions which are themselves founded upon the public interest. These exceptions are confined to cases of simple rather than complex legal services rendered in connection with a lay business and in all such cases the key to the public interest is *practical necessity*.

One class of cases involves the performing of legitimate lay services requiring counselling in areas not essentially legal, such as investments, insurance and tax accounting. Such counselling may well require, if performance is to be substantially effective, the incidental counselling upon questions of law. It would not be in the public interest to prevent the lay counsellor from providing a legitimate public service simply because the performance of that service requires him to counsel on legal questions incidentally connected with his lay specialty. Petition of Ingham County Bar Association, 342 Mich. 214, 69 N.W.2d 713, 55 A.L.R.2d 777; Lowell Bar Association v. Loeb, 315 Mass. 176, 52 N.E.2d 27; Cowern v. Nelson, 207 Minn. 642, 290 N.W. 795.

But in the public interest in such cases the question should be whether the incidental legal services are *necessary* to the providing of what is essentially lay counselling. It should not be enough that certain legal services can be said to be incidental or reasonably connected. It is not the public convenience in the providing of those *legal* services with which we are concerned in such a case. Rather it is that the *lay* services can continue to be effectively given in the public interest.

In another class of cases the practical necessity apparently lies in a comparative lack of lawyers in the light of the volume of transactions of the type requiring the simple legal services. It is a situation where the legal profession is unable to provide the public with the simple services necessary to the transaction. Petition of Ingham County Bar Association, supra. As stated in Lowell Bar Association v. Loeb, supra, "The actual practices of the community have an important bearing on the scope of the practice of law."

The case before us cannot be said to fall within either class. The legal services provided by the title company were, it is true, incidental to its business. That incidence, however, cannot be said to partake of the practical necessity which we regard as essential if an exception is to be made in the public interest. Furthermore it cannot be said that the legal profession is unable to provide the necessary legal services. The very procedures followed by the company disprove this.

The title company was, then, engaged in unauthorized practice of the law.

For the reasons hereinbefore discussed, the injunction issued below is modified to strike therefrom its reference to "purchase and sale agreements for the purchase and sale of real and personal property, or both" and to "escrow agreements" and "escrow instructions." As so modified, judgment is affirmed with costs to respondent.

BADT, C. J., and EATHER, J., concur.