EMMET W. ALLEN AND MYRTLE R. ALLEN, AND TITLE INSURANCE AND TRUST COMPANY, A CALIFORNIA CORPORATION, APPELLANTS, v. R. W. WEBB, RESPONDENT.

EMMET W. ALLEN AND MYRTLE R. ALLEN, APPELLANTS ON CROSS–CLAIM, v. TITLE INSURANCE AND TRUST COMPANY, A CALIFORNIA CORPORATION, RESPONDENT ON CROSS–CLAIM.

No. 6332

June 1, 1971 485 P.2d 677

*Robert Callister* and *Carl J. Christensen,* of Las Vegas, for Emmet W. Allen and Myrtle R. Allen.

*W. Bruce Beckley,* of Las Vegas, for Title Insurance and Trust Company.

*Lionel Sawyer Collins & Wartman,* of Las Vegas, for R. W. Webb.

## OPINION

By the Court, ZENOFF, C. J.:

The Allens owned an apartment building. The Earls owned a ranch in Overton, Nevada. Phillips owned nothing. Phillips negotiated a transaction whereby the Allens conveyed their apartment building to Phillips, Phillips gave them a $71,500 note secured by a trust deed on the Earls' ranch and the Earls conveyed the ranch to Phillips in exchange for the apartment building. As a result of this escrow transaction through Title Insurance and Trust Company, Phillips had a ranch against which he owed $71,500 to the Allens.

Title Insurance, the escrow agent, did not record the deed of trust owned by the Allens, but instead merely mailed it to them. The Allens failed to notice the failure to record until August 29, 1956 and upon noticing the lack of the recorder's stamp on the document they recorded it. Before that recording, Phillips conveyed the ranch to Yuma Investment and Development Company. After an intermediate sale, R. W. Webb, purported to be a nominal holder for Hughes Tool Company, purchased the ranch.

Subsequently, Webb brought an action to quiet his title as to the Allens who defended on the ground that Webb's title did not result from a sale to a bona fide purchaser for value without notice. They cross-claimed at the same time against Title Insurance and Trust Company, the escrow agent, for its purported negligence in failing to record the trust deed in the Allen-Phillips-Earl transaction. In the lower court the Allens lost both actions. The trial court declared the Phillips-Allen Overton ranch trust deed null and void and granted Title Insurance's 41B motion to dismiss.

## THE PRINCIPAL ACTION

The questions on appeal are:

1. Whether the evidence supports the trial court's finding that Yuma was a bona fide purchaser for value without notice of the earlier Phillips-to-Allen trust deed;

2. Whether it was shown that Webb is only the nominal

title holder to the property, and as such, he is not a proper party in interest as per NRCP 17(a);[1]

3. Whether the trial court's findings of fact are incomplete and conflicting, and as such, are inadequate under NRCP 52(a);[2] and

4. Whether hearsay exhibits were improperly admitted. This issue will not be entertained. For failure to press the question with citations of authorities it is deemed abandoned.

1. The trial court found that Yuma from whence Webb's title is derived purchased the Overton ranch in good faith, paid value therefor, and had no notice of the earlier unrecorded trust deed to the Allens. This finding is supported by the evidence and will not be disturbed.

Mel Decker, Yuma's President, was previously acquainted with Phillips in some limited degree. No evidence of collusion, however, appears from the record—only that Phillips had considered himself entitled to a sales fee or commission for another and different transaction involving Yuma which Decker paid

---

[1]RULE 17. PARTIES PLAINTIFF AND DEFENDANT; CAPACITY.

*(a) Real Party in Interest.* Every action shall be prosecuted in the name of the real party in interest; but an executor, administrator, guardian, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in his own name without joining with him the party for whose benefit the action is brought; and when a statute so provides, an action for the use or benefit of another shall be brought in the name of the State.

[2]RULE 52. FINDINGS BY THE COURT.

*(a) Effect.* In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment; and in granting or refusing interlocutory injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action. Requests for findings are not necessary for purposes of review. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. The findings of a master, to the extent that the court adopts them, shall be considered as the findings of the court. If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law specifically appear as such therein. Findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 or any other motion.

by giving Phillips an interest in other property, certain apartment lots, owned by Yuma, called Anderson Lake.

The Allens' multifarious attack on the Yuma-Phillips dealings do not overcome the basic principle that where there is substantial evidence in the record to support the lower court's findings they will not be disturbed despite suspicions and doubts based upon conflicting evidence. Brandon v. Travitsky, 86 Nev. 613, 472 P.2d 353 (1970); Le Mon v. Landers, 81 Nev. 329, 402 P.2d 648 (1965). Webb's burden of showing that Yuma had no notice of the trust deed was met. Bailey v. Butner, 64 Nev. 1, 176 P.2d 226 (1947).

2. The Allens seek to take advantage of a remark made by Webb's counsel that Webb was a mere nominal holder for Hughes Tool Company and invoke NRCP 17(a).

The remark was made during opening argument. As such, it is not a judicial admission and not enough to counter the presumption that the ownership of real estate is where the title says it is. Picetti v. Orcio, 57 Nev. 52, 57, 58 P.2d 1046 (1936). We do not deem counsel's statement to be a binding admission. *Cf.* Gottwals v. Rencher, 60 Nev. 35, 51, 98 P.2d 481 (1940); Edmonds v. Perry, 62 Nev. 41, 71, 140 P.2d 566 (1943); IX Whitmore on Evidence, § 2594A (1940); *but cf.* Laird v. Air Carrier Engine Service, 263 F.2d 948, 953 (5th Cir. 1959). Furthermore, Webb's description of the details of the transaction indicates he is the owner and the Allens provide no contrary evidence. The finding of fact on this point was clearly supported by the evidence and will be upheld. Brandon v. Travitsky, supra.

3. We cannot agree that the findings of fact are incomplete because they fail to recite what consideration Yuma paid for the ranch. A specific finding of what the consideration was may be implied from the record. Pease v. Taylor, 86 Nev. 195, 467 P.2d 109 (1970). Equity in 180 homes, as here, worth about $150,000 net above incumbrance, reasonably can be assumed as the consideration.

Nor is there substance to appellants' contention that the findings are obscure simply because the transaction is sometimes referred to as a "purchase," other times as a "trade." In

essence they are one and the same here. Black's Law Dictionary, "Purchase," 4th ed. (1951); 35A Words and Phrases, "Purchaser," (1963); *cf.* Murphy v. State, 181 P.2d 336, 354 (Ariz. 1947); Indemnity Ins. Co. v. Kircher, 191 N.E. 374 (Ohio App. 1934).

## CROSS–CLAIM

Under the cross-claim the Allens sought to recover the unpaid amount due on the Phillips' trust deed, about $71,000, from Title Insurance and Trust Company, the escrow agent, alleging its negligence in failing to record the deed of trust. They had had successful dealings with regard to other transactions with an officer of the company under whose direction the escrow instructions were drafted. That officer has been with the company several years, is considerably experienced, competent and knowledgeable. Because of those factors, the Allens would impose liability upon the company for failure to perform an act the company customarily performed.

The escrow instructions specifically provided that all instruments and papers required by the escrow agent as necessary and proper and pertinent to the transaction were to be deposited with the escrow agent and, further, "said escrow agent is instructed to deliver and *record* all papers. . . ." (Emphasis added.)

The Title Insurance officer knew the details of the entire Allen-Phillips-Earl transaction. The trust deed was prepared by Title Insurance and notarized by her. At the closing, she told Mrs. Allen, "Well, all papers will be recorded and yours will be mailed to you." The Allens also paid $3.50 for a recording fee which the officer testified was for a different recording, but that was not apparently the Allens' understanding.

Title Insurance later had further dealings with regard to the Overton ranch, then with Phillips as the owner. It issued a Title Insurance policy, recorded a trust deed from Phillips to the Federal Land Bank of Berkeley and recorded a deed from Phillips to Yuma. None of the documents made mention of the Phillips-to-Allen trust deed, but it is asserted that Title Insurance Company knew or should have been aware of the transaction as being first in time to the Yuma deal.

On August 29, 1956, after they discovered that their trust deed had not been recorded at the closing of the escrow, the Allens recorded their trust deed. This was 19 days after the recording of the Phillips-to-Yuma deed, of which the Allens

had no knowledge until 1968. Meanwhile, Phillips made payments on the note until January or February of 1957. When the payments ceased the Allens learned that Phillips was in prison and figured their money, property and trust deed were gone. They took no action until 1968 when they recorded a default against Phillips, defended this action and cross-claimed as stated.

Three bases were asserted by Title Insurance's motion to dismiss:

1. Title Insurance was not instructed to record the Phillips-to-Allen trust deed;

2. Running of the statute of limitations; and

3. The cross-claim failed to specify affirmative facts explaining why the Allens did not discover the alleged fraud.

The motion was granted on the second ground.

1. The escrow instructions recited the requirement that Title Insurance Company record the trust deed, Title Insurance orally promised to record it and the eminence, experience and knowledge of Title Insurance in its field is that of handling the minituae of real estate closings. From their superior knowledge flowed a duty to their clients, the Allens, to do such things as recording documents or advise them when they did not. Theirs is the knowledge of a lawyer. In fact, they acted the part in preparing the documents. See Pioneer Title v. State Bar, 74 Nev. 186, 326 P.2d 408 (1958); *cf.* Humphrey v. Knobel, 78 Nev. 137, 369 P.2d 872 (1962), and Francis v. Eisenmayer, 340 P.2d 54, 58 (Cal.App. 1959).

Not only did the escrow instructions state that Title Insurance was to record all papers, the normal exigencies of the situation called for them to do so. The act of recording is in their line of business—a normal part of their duties, not an exception. Part of the expectancies of ordinary laymen such as the Allens is that the escrow agent will record the necessary documents. The instructions and conversations of Title Insurance gave no warning that they would do otherwise. Bates v. Cottonwood Cove Corp., 84 Nev. 388, 441 P.2d 622 (1968). See Paso Builders, Inc. v. Hebard, 83 Nev. 165, 426 P.2d 731 (1967).

2. If Title Insurance should have recorded the deed, it is still necessary for the Allens to show that the statute of limitations was tolled for such a time after the date Title Insurance failed to record the trust deed in 1957 that it had not run by the date this action was started on December 30, 1968.

In the event the party relied upon in a fiduciary situation fails to fulfill his obligations, and if it also fails to tell the other party of this failure, there is said to be fraudulent concealment and constructive fraud, so the statute of limitations may be tolled. Amen v. Merced County Title Company, 375 P.2d 33, 36 (Cal. 1962); Annot., 173 A.L.R. 576 (1948). Since this contention is not contradicted by Title Insurance it will be assumed proper for the sake of this discussion. In light of our conclusion in point one, supra, that Title Insurance was obligated to record the trust deed, we hold that its failure to record and failure to advise the Allens of that fact resulted in the tolling of the statute of limitations until the Allens discovered or should have discovered their damage. For the sake of this opinion, we assume that the Allens had a cause of action against Title Insurance for failure to record and failure to advise them of the effect of this failure from the date of the impairment of their trust deed security on August 10, 1956. The question presented is thus whether the statute of limitations began running before 1968 because the Allens should have known of the Phillips-to-Yuma deed.

The substance of Title Insurance's argument on this issue centers on its contention that, as a matter of law, Allens had such notice of the failure to record in August 1956, and that they were required to inquire further. Howard v. Howard, 69 Nev. 12, 239 P.2d 584 (1952). Upon that further inquiry, it is urged they would have discovered the impairment of their trust deed interest. But because this is an appeal from the granting of an NRCP 41(b) motion to dismiss, if it is permissible to infer from the evidence that Allens did not have such notice as would lead a reasonable person to inquire further, such an inference must be made. Bates v. Cottonwood Cove Corp., supra.

A brief recapitulation of the facts may be helpful. In April 1956 the Phillips trust deed was returned to the Allens without any notation on it that it had been recorded. At about this time the Allens paid Title Insurance the escrow charges which included a $3.50 charge for "recording fee—mortgages—trust deed." There was no explanation on the statement for this charge, though it was later explained by the Title Insurance officer as relating to a previously unrecorded second deed of trust on the Allens' apartments. In August 1956 (after the Phillips-to-Yuma deed had been recorded), the Allens noticed

that their trust deed was not stamped as having been recorded, so they inquired at the recorder's office. Upon being told that the trust deed had not been recorded, they had it recorded. It is noteworthy that though the testimony in the record reveals that the Allens had previous dealings in real estate, that testimony also reveals their lack of sophistication in these matters. Hence, the conclusion of the dissent that the Allens "apparently knew of the need to protect their security by recording" is disputable. They made no further inquiry into the matter, but merely continued to receive Phillips' monthly payments until January 1957. At that time he stopped making the payments. The Allens attempted unsuccessfully to collect from Phillips through phone calls and letters. Thereafter, in early 1957, they contacted an attorney and discussed the situation with him. No foreclosure proceedings or any other proceedings were instituted and nothing further was done until 1968 when the Allens recorded a default against Phillips.

May it be said on these facts that the Allens acted in a reasonable manner in failing to inquire further as to the status of their title, or must it be said as a matter of law that they had constructive knowledge of the Phillips-to-Yuma deed in August 1956 or in early 1957 because they knew of certain facts which would have led a reasonable person to further inquiry? Though the Phillips-to-Yuma deed was recorded, the mere fact of the record notice does not provide sufficient basis for holding the Allens to have had notice unless they had reason to check the real estate records. Annot., 137 A.L.R. 268 (1942); Note, 63 Harv.L.Rev. 1177, 1217 (1950). Ordinarily the constructive knowledge of recording statutes is held to prospective purchasers of realty. It does not necessarily follow that people in the position of the Allens are stuck with the same application. They were possessors of a trust deed thought by them to have been recorded at the conclusion of their transaction. Theirs was a final position, not preliminary. Moreover, while the Allens became aware that Phillips was imprisoned, nothing more bearing on their transaction came to light at that time. When he defaulted in payment they consulted an attorney, but foreclosure did not follow.

Allens assert simply that a question of reasonableness of conduct is presented. We agree. It cannot be said as a matter of law on these facts that the Allens should have known of the Yuma deed and, hence, of the constructive fraud. Instead,

further proceedings must be had. *Cf.* Cardinal v. Masland, 87 Nev. 224, 484 P.2d 1075 (1971).

3. Respondents also urged below as a basis for its motion to dismiss that the Allens failed to plead their reasons for failing to assert this claim within the statutory period. It asserts the general rule is that one seeking to avoid running of the statute of limitations because of nondiscovery of facts showing a cause of action for constructive fraud or fraudulent conceal-ment must affirmatively plead facts showing his inability to dis-cover such facts sooner by exercise of reasonable diligence. Annot., 172 A.L.R. 265 (1948); Howard v. Howard, 69 Nev. 12, 21, 239 P.2d 584 (1952).

Appellants reply to the assertion by urging that, first, such a pleading requirement no longer exists because NRCP 8 places upon the defending party the burden of pleading the affirmative defense of statute of limitations; and second, even if such a requirement prevails, the complaint satisfies it.

Because we conclude that the complaint does satisfy the requirement contended for by Title Insurance, we do not address the contentions that the adoption of the NRCP abro-gated the rule that the pleader excuse his failure to assert the claim earlier. Here, the Webbs described their fiduciary relation-ship with Title Insurance, described the acts and promises of Title Insurance and stated that they believed their interests and rights to be secure and that they had no reason to believe other-wise. To require more at the pleading stage would be akin to requiring them to show a negative—*i.e.,* how notice was not brought to their attention. As in Amen v. Merced County Title Company, 375 P.2d 33 (Cal. 1962), the pleading must be held to be sufficient.

Respondent also makes certain arguments founded on the assumption that this is an action for negligence, not for fraud. These arguments were not raised below. Moreover, from the foregoing it is apparent that we regard this action as founded upon the constructive fraud of Title Insurance. Amen v. Merced County Title Company, supra.

Judgment in principal action affirmed; judgment in cross-action reversed; remanded for further proceedings consistent with this opinion.

Mowbray, J., concurs.

Gunderson, J., concurring:

I agree that it cannot be said, from the record before us, that

the Allens should have known of the Yuma deed. Accordingly, I concur in the view that further proceedings must be had with regard to the Allens' cross-claim.

However, I am inclined to believe that if a full trial establishes no more than the record now before us, insofar as notice to the Allens is concerned, then the Allens will be entitled to relief against Title Insurance and Trust Company as a matter of law. I trust that our holding will not be interpreted as determining this issue.

THOMPSON, J., dissenting from the reversal of the judgment below dismissing the cross-claim:

The Allens sought damages from Title Insurance for its failure to record their deed of trust. The district court ruled that their claim was barred by limitations. NRS 11.190(3). This ruling was correct. Their claim had to be presented within three years of their discovery of facts constituting the fraud or mistake, or run the risk of defeat if limitations was raised in bar. Title Insurance raised that defense.

The Allens discovered the failure to record in August 1956, and perhaps as early as April of that year when they received their trust deed in the mail and without the recording data on its face. In any event, on August 29, 1956 the Allens recorded that document. They did this upon their own motivation and apparently were aware of the need for recordation to protect their rights as against innocent third persons. Meanwhile, on August 10, 1956, Phillips conveyed the property to Yuma, a bona fide purchaser. That conveyance was recorded, and the Allens were charged with constructive notice thereof. NRS 111.320; Allison Steel Manufacturing Co. v. Bentonite Inc., 86 Nev. 494, 471 P.2d 666 (1970); State v. Langan, 36 Nev. 577, 137 P. 517 (1913). Actual knowledge of the mistake together with constructive knowledge of the intervening conveyance and the possible damage to flow therefrom might, without more, be deemed by some courts to start the running of the limitation period [Strong v. Clark, 352 P.2d 183 (Wash. 1960); cases collected Annot. 137 A.L.R. 268] and thus bar any claim for relief asserted by the Allens after August 10, 1959. The impact of the constructive notice provisions of our recording statute upon the running of a statute of limitations as distinguished from a problem of title need not be here decided since it is otherwise clear that the Allens possessed knowledge of facts that would cause a reasonable person to inquire further. Aldabe v. Adams, 81 Nev. 280, 402 P.2d 34 (1965); Howard v. Howard, 69 Nev. 12, 239 P.2d 584

(1952). Had further inquiry been made the fraudulent intervening conveyance would have been discovered.

The Allens had participated in several prior property transactions. This was not their maiden voyage. They apparently knew of the need to protect their security by recording their trust deed and did so on August 29, 1956. Payments upon the note which the trust deed secured stopped in February and their debtor, Phillips, disappeared and could not be found. This was a warning of danger. Their concern was evident for they consulted a lawyer. The lawyer's advice is not revealed. All of these circumstances compel the conclusion that the Allens' claim for damages from Title Insurance, asserted more than 12 years after they learned of the mistake and at least 11 years after they should have known of the Phillips-Yuma conveyance, is barred by limitations.

BATJER, J., concurring in part and dissenting in part:

I concur with that part of the majority opinion where they concluded that the judgment in the principal action should be affirmed. I dissent from that part of the majority opinion that reverses the judgment in the cross-action.

I agree with THOMPSON, J., in his dissent, where he concludes that the Allen's claim for damages from Title Insurance is barred by the statute of limitations. However, I believe that their claim is barred because they had constructive notice of the conveyance from Phillips to Yuma which was recorded before their deed of trust.

Constructive knowledge of the intervening conveyance was sufficient to apprise the Allens of their precarious position brought about by the title company's failure to record their deed of trust.

Our recording statute, NRS 111.320, is extremely explicit in providing that "Every such conveyance or instrument of writing, acknowledged or proved and certified, and recorded in the manner prescribed in this chapter, shall, from the time of filing the same with the recorder for record, impart notice to *all persons* of the contents thereof; . . ." (Emphasis added.) The Allens are among those covered by the statute. As soon as the deed from Phillips to Yuma was recorded the statute of limitations began to run against them. NRS 11.190(3)(d).

In Strong v. Clark, 352 P.2d 183 (Wash. 1960), that court held: "When an instrument involving real property is properly recorded it becomes notice to all the world of its contents. (Citations omitted.) When the facts upon which the fraud is predicated are contained in a written instrument which is placed

on the public record, there is constructive notice of its contents, and the statute of limitations begins to run at the date of the recording of the instrument." See cases collected in Annot. 137 A.L.R. 268.

The judgments of the district court should be affirmed in their entirety.