**SIERRA DIESEL INJECTION SERVICE, a Nevada corporation, Plaintiff,**

v.

**BURROUGHS CORPORATION, INC., a Delaware corporation, Defendant.**

**No. CV–R–84–535–ECR.**

United States District Court, D. Nevada.

Oct. 14, 1986.
Reconsideration Denied Jan. 28, 1987.

Haase, Harris & Morrison, Reno, Nev., for plaintiff.

Brown & Bain, P.A., Phoenix, Ariz., and Lionel Sawyer & Collins, Reno, Nev., for defendant.

## ORDER

EDWARD C. REED, Jr., Chief Judge.

This case comes to this Court by way of the United States Magistrate, who has tendered her Report and Recommendation regarding the defendant's motion for summary judgment. At issue in the suit is the sale of a computer system by the defendant to the plaintiff. In 1977, the plaintiff approached the defendant with the idea of computerizing its billing and accounts receivable. The defendant, after observing the plaintiff's daily operations, suggested that its B–80 model computer would handle the requirements of the plaintiff's business. Soon after the B–80 was installed, however, the plaintiff began to experience a variety of problems with the machine, including basic equipment failures, and, more importantly, the machine's inability to "multi-program." The defendant made a series of efforts to correct the machine's shortcomings, and assured the plaintiff through this period that the B–80 was the proper equipment for this type of business.

The problems with the B–80 continued until 1981, with the plaintiff protesting the machine's problems, and the defendant apparently promising and attempting to fix them all the while. In 1981, the parties agreed that a newer model, the B–91, would be able to handle the desired multi-programming without the difficulties experienced with the B–80. The B–91 was installed, and parts of the B–80 were transplanted into the new system. Ultimately, however, the same difficulties were experienced with the B–91. In December of 1982, after a similar series of basic equipment breakdowns, the parties retained an independent expert to analyze the B–91's problems. This expert concluded that it was impossible for the B–91 to do the desired multi-programming, and that the B–91 could never be modified so as to perform these tasks. At this point, the plaintiff removed the defendant's computer from its office, and installed a different system. Plaintiff filed this suit in November of 1984, some three years after the B–91 was installed, and some seven years after the B–80 was installed. In the complaint, the plaintiff raises a variety of causes of action, but these are more simply stated as actions for fraud and misrepresentation, and for breach of contract and warranty.

The defendant has moved this Court for summary judgment, contending that the plaintiff's claims are all barred by the applicable statutes of limitation. In terms of the fraud claims, the defendant contends that the plaintiff must have been aware of the potential fraud or misrepresentation regarding the B–80 in 1980, when the decision was made to replace it with the B–91. Further, the defendant argues that the plaintiff must have been aware of the potential fraud or misrepresentation regarding the B–91 after installation in 1981, when it became apparent that the B–91 would also not perform as expected. In that the applicable statute of limitations in fraud cases in Nevada is three years, and in that neither of the fraud claims was filed within the three-year period, the defendant argues that summary judgment is proper on these claims. NRS § 11.190(3)(d).

The defendant further contends that the contract and warranty claims are similarly time-barred. Initially, the contracts in question in this case adopt a two-year statute as authorized by NRS § 104.2725(1). As with the fraud and misrepresentation claims, the defendant argues that the plaintiff was aware of the potential breaches of contract and warranty in 1980 for the B–80, and in 1981 for the B–91. Therefore, the applicable statute, as supplied by the

contract, indicates that these claims were stale by the time the plaintiff filed its action.

In her Report and Recommendation to this Court, the United States Magistrate found the following:

1. that the various statutes of limitations applicable in this case were not tolled during the defendant's attempted repairs of the claimed deficiencies, nor were the claims surrounding the B–80 revived by the agreement in 1980 for the trade-in of the B–80 for the B–91.

2. that the contract causes of action surrounding the B–80 accrued no later than October, 1978, when the system had been delivered and began to malfunction.

3. that plaintiff's knowledge of the B–80's shortcomings causing it to trade in the system for the B–91 constituted knowledge of facts from which it should have been able to learn of any fraud or mistake regarding the B–80.

4. that the defendant had failed to supply the evidentiary support necessary to substantiate any of its claims regarding the B–91 system.

Because of these findings, the Magistrate recommends that the defendant's motion for summary judgment be granted as far as all of plaintiff's claims regarding the B–80. As far as the plaintiff's claims regarding the B–91 are concerned, the Magistrate recommends that the defendant's motion be denied, in that there still exist genuine issues of material fact on that claim. This Court has reviewed the Magistrate's Report and Recommendation, as well as both parties' objections. In that genuine issues of fact regarding both the B–80 and B–91 claims still exist, summary judgment is not proper at all in this case, and the Magistrate's Report and Recommendation must be rejected in part and affirmed in part.

## STANDARDS FOR SUMMARY JUDGMENT

Fed.R.Civ.P. 56(c) indicates that summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact left for resolution at trial. *Id.; see Avila v. Traveler's Insurance Companies*, 651 F.2d 658, 660 (9th Cir. 1980). The moving party has the burden of establishing that there is no genuine issue of fact left in the case and once this burden is met by producing sufficient evidence, the burden shifts to the opposing party to set forth specific facts which indicate the existence of a triable issue of fact. *Id.* The party opposing the motion is entitled to have evidence construed and inferences drawn from that evidence in the light most favorable to him, and if these inferences and evidence indicate the existence of a triable fact issue, summary judgment must be denied. *Id.* In the present case, it appears to this Court that there are genuine issues of material fact regarding statute of limitations questions of both the B–80 and the B–91 contracts, and that summary judgment is therefore not proper in this case.

## THE FRAUD CLAIMS

■ As noted above, the Magistrate found that the plaintiff's cause of action sounding in fraud regarding the B–80 system was time-barred, in that the plaintiff must have known or have had reason to know that there was potential fraud involved by 1980. The defendant agrees with this conclusion, but also contends that the fraud claims regarding the B–91 system are also time-barred, in that the plaintiff must have been aware of the potential fraud regarding the defendant's representations of the newer machine immediately after it was installed. Neither of the assessments is entirely correct.

Initially, the Court notes that the Nevada statute of limitations regarding fraud claims is set forth in NRS § 11.190(4), which indicates that a cause of action sounding in fraud must be brought within three years from the discovery of the facts constituting the fraud or mistake. The Magistrate found that knowledge of facts regarding the potential fraud on the B–80 system existed in 1980, when both parties

agreed that the system would have to be replaced. Indeed, James Cathey, the plaintiff's president, stated in deposition that he considered the B–80 to be a "dead issue" in 1980. This does not indicate that the plaintiff necessarily had knowledge of facts constituting fraud, however. That the B–80 was a dead issue in 1980 indicates that the plaintiff knew that the machine did not work, not necessarily that the plaintiff knew that it had been the victim of fraud. Further, as stated in the plaintiff's affidavits, it seems possible that the actual date of the discovery of the fraud was in late 1982, when the report of the independent expert hired by both parties indicated that neither of the Burroughs systems would ever be capable of multi-programming, regardless of how many accessories were added.

The defendant further urges that the plaintiff had to know of the possible fraud regarding the B–91 immediately after the machine was installed in 1981. Once again, however, it appears that the plaintiff may have known only that the machine did not work as promised at that time. The actual date of the discovery of facts constituting fraud on the B–91 may also be the date of the report of the independent expert, as that report appears to have been the first indication to the plaintiff that the B–91 also would never be able to perform multi-programming.

This version of the facts is, of course, not necessarily what occurred between the parties. The Court merely discusses here the possible inferences from the evidence presented to it, so as to discover the existence of a genuine issue of material fact. *See Avila, supra.* At trial, it may indeed be proved that this interpretation of the evidence is faulty. On a motion for summary judgment, however, the Court merely looks for any genuine issue of material fact which must be resolved at trial. *Id.* In this case, the independent expert's report raises such an issue regarding the date of the discovery of facts constituting fraud, and summary judgment must therefore be denied as to those counts.

## THE CONTRACT AND WARRANTY CLAIMS

As stated above, the Magistrate found that the contract and warranty claims regarding the B–80 were time-barred, in that the contractual statute of limitations began to run in October of 1978, and that the actions of the defendant did not toll the running of the statute. The defendant further argues that the statute regarding the B–91 began to run as soon as the machine was delivered in 1981, and that this claim is likewise time barred.

The applicable statute of limitations on goods is set out in Nevada's version of UCC § 2–725, which states that

1. An action for breach of any contract for sale must be commenced within 4 years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than 1 year but may not extend it.

2. A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

3. Where an action commenced within the time limited by subsection 1 is so terminated as to leave available a remedy by another action for the same breach such other action may be commenced after the expiration of the time limited and within 6 months after the termination of the first action unless the termination resulted from voluntary discontinuance or from dismissal for failure or neglect to prosecute.

4. This section does not alter the law on tolling of the statute of limitations nor does it apply to causes of action which have accrued before this chapter becomes effective.

NRS § 104.2725. In the present case, the contracts of the parties do indicate that the applicable statute has been trimmed down to two years, as provided for in section 1 of the statute. It would thus appear that the applicable statute is 2 years in this case.

The plaintiff contends, however, that the two years provision is unconscionable, as it is the result of a gross disparity of bargaining power between the plaintiff and the defendant. *See* NRS § 104.2302. For the purposes of this motion, however, the unconscionability argument need not be considered, in that one plausible interpretation of the facts indicates that the contract causes of action did not accrue until December of 1982. In that suit was filed in November of 1984, it does not matter that the statute may actually be only two years long in this case.

■ In her Report and Recommendation, the Magistrate concluded that the choice of law clause in the contract governed the statute of limitations question, and that Michigan law therefore controlled the question of when and if the statute was tolled. This assessment appears to be incorrect. The classical rule, as established in *Restatement (Second) of Conflict of Laws* section 142 (Supp.1985), indicates that the local law of the forum governs whether an action is barred by the statute of limitations. *Id.,* comment (a); *see Santana v. Holiday Inns, Inc.,* 686 F.2d 736, 738 (9th Cir.1982). In that this Court is bound to apply Nevada law in conflict situations arising in diversity cases, it is Nevada law, not that of Michigan, which must control the statute of limitations and tolling questions in this case. *See Klaxton Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 496–97, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941); *Santana, supra,* at 738–39. It appears that under the general rule, the statute of limitations in contract and warranty actions may be tolled during the period in which the seller of goods promises to repair and makes attempts to repair faulty goods.

In *Aced v. Hobbs Sesack Plumbing Co.,* 55 Cal.2d 573, 360 P.2d 897, 12 Cal.Rptr. 257 (1961), for example, Hobbs had contracted in 1953 with Aced as a subcontractor to furnish the labor and material for a radiant heating system in a home being built by Aced. 360 P.2d at 898, 12 Cal. Rptr. at 258. Numerous leaks developed in the system after it was installed, and the entire system had to be replaced in 1955. In September of 1956, the owners of home brought suit against Aced, and Aced impleaded Hobbs in February of 1957 for indemnity. *Id.* Hobbs defended against the impleader, contending that any possible warranty on the pipes in question would have expired at the end of the four-year statute of limitations, which had expired the month before Aced had impleaded Hobbs.

The Supreme Court of California rejected this argument. "The statute of limitation," it noted, "is tolled where one who has breached a warranty claims that the defect can be repaired and attempts to make repairs." *Id.,* 360 P.2d at 904, 12 Cal.Rptr. at 264 *citing Southern Cal. Enterprises v. D.N. & E. Walter & Co.,* 78 Cal.App.2d 750–755, 178 P.2d 785 (1947); *Louisville Silo & Tank Co. v. Thweatt,* 295 S.W. 710, 712 (1927); *Heath v. Moncrieff Furnace Co.,* 200 N.C. 377, 156 S.E. 920, 922 (1931). Although the court noted that the facts were not clear enough to allow application of the rule in this case, it found that there was testimony from a Hobbs' representative which indicated that Hobbs had made promises to the owners of the house that it would repair the problem, and had actually spent several months in attempting to repair the problem. Thus, the court concluded that a clearer record might have indicated that the rule should be applied, and that the statute would have been tolled by the promises and repair attempts.

■ Other courts have accepted the proposition that repair promises and attempts can toll the running of the statute of limitations. *see Daughtry v. Jet Aeration Co.,* 18 Wash.App. 155, 566 P.2d 1267, *rev'd on other grounds,* 91 Wash.2d 704, 592 P.2d 631 (1979); *Styron v. Loman-Garrett Supply Co.,* 6 N.C.App. 675, 171

S.E.2d 41 (1970); *Mid City Finance Co. v. Coleman,* 232 So.2d 918 (La.App.1970); *Mack v. Hugh W. Comstock Associates, Inc.,* 225 Cal.App.2d 583, 37 Cal.Rptr. 466 (1964); *Nowell v. Great Atlantic & Pacific Tea Co.,* 250 N.C. 575, 108 S.E.2d 889 (1959). Although no Nevada case directly discusses the point, this tolling concept is thus widely accepted in other jurisdictions and is found in several well reasoned cases. Where the state courts are silent on a matter, it is this Court's task to use its "own best judgment in predicting how the state's highest court would decide the case." *Fiorito Bros., Inc. v. Fruehauf Corp.,* 747 F.2d 1309, 1314 (9th Cir.1984) *quoting Takahashi v. Loomis Armored Car Service,* 625 F.2d 314, 316 (9th Cir. 1980). In that the more persuasive opinions from other jurisdictions adopt this method of tolling, the Court finds that the Nevada Supreme Court would also assume this position if it were presented with this question.

Application of this tolling method to this case indicates that summary judgment is inappropriate on the contract and warranty claims as well. Initially, the plaintiff's evidence shows that the defendant had made promises to repair and had actually attempted to repair the B–80 unit from the date on which it was purchased until shortly before the B–91 was brought in to replace it. Further, the plaintiff's evidence indicates that the B–91 itself was a replacement for the B–80; that is, the B–91's installation was itself a further attempt to repair the B–80. This is borne out by the fact that parts of the B–80 were used in the B–91. In this sense, the plaintiff contends that the installation of the two computers, and the promises and attempts to repair them should be viewed as one single transaction, and that the cause of action for the transaction did not arise until the report of the independent expert indicated that the defendant's machine could never fulfill the plaintiff's requirements. Up until this time, the plaintiff contends, the defendant had been steadfastly trying to remedy the problems with the systems, and had promised to make the system work. It was only after the report was filed that the true breach occurred.

The plaintiff's evidence thus indicates the existence of a genuine issue of material fact. If the plaintiff's versions of the facts ultimately bears up at trial, the defendant's repair attempts and promises will have tolled the statute of limitations on the warranty and contract claims, and the case will be decided on the merits. Because of this genuine fact issue, summary judgment is also not available on the plaintiff's contract and warranty claims.

IT IS, THEREFORE, HEREBY ORDERED that the Magistrate's Report and Recommendation is AFFIRMED IN PART, and REJECTED IN PART.

IT IS FURTHER ORDERED that the defendant's motion for summary judgment is DENIED.