**Robert F. TIMMEL, Plaintiff-Appellant,**

v.

**Gene MOSS and College Hospital, Inc., Defendants-Appellees.**

**No. 85–6531.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 11, 1986.

Decided Oct. 27, 1986.

W. David Allen, Washington, D.C., for plaintiff-appellant.

Nancy J. Watson, Dummit & Agajanian, Los Angeles, Cal., Loren S. Leibl, Sherman Oaks, Cal., for defendants-appellees.

Before CANBY, REINHARDT and JOHN T. NOONAN, JR., Circuit Judges.

CANBY, Circuit Judge:

Robert F. Timmel appeals from the grant of summary judgment in favor of defendants. The district court held that his medical malpractice action is barred by the applicable statute of limitations. We reverse and remand.

In 1979, appellant was diagnosed as having a psychiatric disorder. Appellant's work required him to relocate frequently; he was treated by several psychiatrists and hospitalized in different institutions on three occasions between 1979 and early 1982. During that period appellant was treated with neuroleptic drugs, including Trilafon.

In March or April 1982, after appellant was taken off Trilafon, he developed neurological symptoms and was diagnosed as having tardive dyskinesia. Appellant subsequently learned that his tardive dyskinesia was the result of long-term treatment with neuroleptic drugs, including Trilafon, and that the condition was irreversible.

On January 27, 1984, appellant filed a diversity action alleging that Dr. Moss and College Hospital had negligently provided psychiatric care and treatment to him by inappropriate use of neuroleptic drugs and by failing to advise him that tardive dyskinesia is a potential side effect of such drugs. The district court granted summary judgment to Dr. Moss and College Hospital, holding that appellant's complaint

was barred by the California statute of limitations applicable to malpractice actions, California Code of Civil Procedure section 340.5.

We review an order granting summary judgment *de novo*. *Fruehauf Corp. v. Royal Exchange Assurance of America*, 704 F.2d 1168, 1171 (9th Cir.1983). We apply the same standard as that applied by the district court and will affirm a grant of summary judgment "only if it appears from the record, after viewing all evidence and factual inferences in the light most favorable to the appellant, that there are no genuine issues of material fact and that the appellee is entitled to prevail as a matter of law." *Heiniger v. City of Phoenix*, 625 F.2d 842, 843–44 (9th Cir.1980). We review issues of state law de novo. *Matter of McLinn*, 739 F.2d 1395 (9th Cir.1984).

California Code of Civil Procedure section 340.5 provides:

> In an action for injury or death against a health care provider, based upon such person's alleged professional negligence, the time for the commencement of action shall be three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first. In no event shall the time for commencement of legal action exceed three years unless tolled for any of the following: (1) upon proof of fraud, (2) intentional concealment, or (3) the presence of a foreign body, which has no therapeutic or diagnostic purpose or effect, in the person of the injured person.

In applying section 340.5, the district court stated, "A claim for relief against a physician or health care provider accrues at the time the plaintiff learns of the cause of his injury, and not at the time he becomes aware of any negligence on the part of the physician or health care provider." We conclude that, under applicable California authority, the district court applied an improper standard in assessing whether the one-year statute of limitations had begun to run on appellant's medical malpractice claim.[1]

■ The California courts interpret "injury," as it is used in section 340.5, to mean both the physical injury *and its negligent cause*. *Gutierrez v. Mofid*, 39 Cal.3d 892, 896, 705 P.2d 886, 888, 218 Cal.Rptr. 313, 315, (1985); *Sanchez v. South Hoover Hospital*, 18 Cal.3d 93, 96–97, 553 P.2d 1129, 1132, 132 Cal.Rptr. 657, 660 (1976). "Thus, once a patient knows, or by reasonable diligence should have known, that he has been harmed *through professional negligence*, he has one year to bring his suit." *Gutierrez*, 39 Cal.3d at 896, 705 P.2d at 888, 218 Cal.Rptr. at 315 (emphasis added). To the extent, therefore, that the district court required actual or constructive notice only of the cause, rather than the *negligent* cause, of the injury, it erred. The plaintiff must be aware of *facts* sufficient to put a reasonable person on inquiry that negligence was the cause of the injury; plaintiff need not, however, be aware that a legal cause of action exists before the statute of limitations begins to run. *Id.* at 897–98, 705 P.2d at 889, 218 Cal.Rptr. at 316;[2] *Graham v. Hansen*, 128 Cal.App.3d 965, 972, 180 Cal.Rptr. 604, 609 (1982).

■ Where the cause of action was belatedly discovered, the issue whether the plaintiff exercised reasonable diligence is a question of fact. *Graham*, 128 Cal.App.3d at 972, 180 Cal.Rptr. at 609. *Id.* "The test

---

1. Appellant's tardive dyskinesia was tentatively diagnosed in March or April 1982 and confirmed after a hospitalization in July 1982. Therefore, his action, filed January 27, 1984, falls within the three year limitations period.

2. We do not regard the holding in *Gutierrez* to be inconsistent with our decision today. In *Gutierrez*, plaintiff was clearly aware of facts showing both injury and its wrong-

ful cause. The issue was whether an attorney's advice that no claim existed prevented limitations from running. A majority of the California Supreme Court held that it did not. The issue in our case, however, is whether plaintiff had notice of facts sufficient to put him on inquiry of the negligent cause of his injury more than one year prior to the institution of his suit.

is whether the plaintiff has information of circumstances sufficient to put a reasonable person on inquiry or has the opportunity to obtain knowledge from sources open to his or her investigation." *Id.* (quoting *McGee v. Weinberg,* 97 Cal.App.3d 798, 803, 159 Cal.Rptr. 86 (1979)). The reasonableness of a delayed discovery presents a question of law only "when the evidence establishes beyond dispute that the plaintiff has failed to bring the action within one year after notice of its existence." *Graham,* 128 Cal.App.3d at 972, 180 Cal.Rptr. at 608–09.

Viewing the evidence in a light most favorable to appellant, we conclude that the district court erred in granting summary judgment to defendants. The evidence indicates that: (1) Appellant was treated by numerous physicians in different cities with Trilafon or related drugs. (2) He was told that this medication was necessary to control his psychiatric episodes. (3) In October 1981, Dr. Moss forbade him to follow the suggestion of a subsequent psychiatrist that he take Lithium instead of Trilafon. (4) After appellant discontinued daily dosages of Trilafon, he developed tardive dyskinesia. (5) After appellant discontinued Trilafon, he was given brief courses of another neuroleptic drug when he suffered a psychiatric episode. (6) Although appellant's tardive dyskinesia was tentatively diagnosed soon after he discontinued the Trilafon, he was advised that the tardive dyskinesia might resolve itself in six months to a year or two years. (7) Appellant's tardive dyskinesia was confirmed during a hospitalization in June 1982, during which he was given a pamphlet on tardive dyskinesia to read. (8) At his deposition, Dr. Tarantolo, appellant's treating psychiatrist from February or March 1982 through early 1984, testified that during a session on November 16, 1982, appellant indicated that he was considering suing his previous doctors. In a subsequent affidavit, Dr. Tarantolo described this incident as an expression by appellant of his generalized anger at his overall condition. (9) With regard to the November 16, 1982, session with appellant, Dr. Tarantolo testified that he told appellant "many times" that he should have been warned by his previous psychiatrists about tardive dyskinesia. (10) During February 1983, appellant began treatment with Lithium. By the summer of 1983, the Lithium had controlled appellant's psychiatric symptoms. (11) Appellant asserts by affidavit that the first time he became aware that his psychiatrists may have made a mistake was May 1983.

The evidence, therefore, consists of conflicting testimony and affidavits about when appellant should reasonably have become aware that he should have been warned about the potentially devastating side effects of Trilafon. It is undisputed that appellant was advised that the tardive dyskinesia might be a temporary condition and that his symptoms were successfully controlled by Lithium. Thus, the evidence does not establish "beyond dispute" that by late 1982 appellant was aware that his condition was due to his possibly negligent treatment with Trilafon. A question of fact also exists as to whether appellant exercised reasonable diligence in discovering his injury and its allegedly negligent cause.

REVERSED AND REMANDED.

NOONAN, Circuit Judge, dissenting:

The Supreme Court of California has stated:

> ... the uniform California rule is that a limitations period dependent on discovery of the cause of action begins to run no later than the time the plaintiff learns, or should have learned, the *facts* essential to his claim. *Gutierrez v. Mofid,* 218 Cal.Rptr. 313 at 316, 39 Cal.3d 892, at 897, 705 P.2d 886, at 889 (1985) (italics in original).

After citing earlier cases to the same effect, the Supreme Court of California states:

> It is irrelevant that plaintiff is ignorant of his legal remedy or the legal theories underlying his cause of action. *Id.* at 316; 39 Cal.3d at 898; 705 P.2d at 889.

In the present case Robert F. Timmel was treated in 1982 by Dr. Joseph Tarantolo of the Psychiatric Institute of Washington, D.C. In March of 1982 Dr. Tarantolo diagnosed his condition as tardive dyskinesia and its cause as probably the long term use of Trilafon. On November 16, 1982 Timmel told Tarantolo that he was considering legal action against his prior psychiatrists due to his belief that they had negligently failed to inform him that tardive dyskinesia was a risk of the extended use of Trilafon. Tarantolo advised him to consult a lawyer. At this point Timmel learned "or should have learned" the *facts* essential to his claim.

In *Gutierrez* the plaintiff suspected that the surgeon had "done something wrong" when she left the hospital in December 1978. One doctor in January 1979 advised her to sue, and another in February told her she had had "too much surgery." At that point she was on constructive notice and had, as the statute itself prescribes, "a duty of diligent inquiry." *Id.* at 316; 39 Cal.3d at 897; 705 P.2d at 889. In our case after Dr. Tarantolo had told Timmel his problem and its cause and Timmel had recognized that negligence was involved, Timmel was under a similar duty of diligent inquiry. I am unable to see any significant difference between Tarantolo's advice and the advice given by the physician in *Gutierrez* to sue, advice which even the dissent in *Gutierrez* thought was enough to start the running of the Statute if an attorney had not then advised against suit. *Id.* at 321; 39 Cal.3d at 905; 705 P.2d at 894 (per Bird, C.J.).

By November 16, 1983, Timmel not only had knowledge of the *facts;* he was aware that to make his knowledge effective he would need legal assistance. As the Supreme Court of California put it, the Statute begins to run when "one has suffered appreciable harm and knows or *suspects* that professional blundering is its cause ...." *Id.* at 316 (italics supplied); 39 Cal.3d at 905; 705 P.2d at 894. The opinion of the court acknowledges that Tarantolo told Timmel "many times" on November 16, 1982 that his earlier psychiatrists should have warned him about the dangers of the drug they had prescribed. If such warning did not make Timmel suspect he had a case, what would have done the job? Not, however, until January 24, 1984 was Timmel's suit brought. By that date the Statute had run. The period in which to bring suit had "inexorably" expired. *Id.* at 319; 39 Cal.3d at 902; 705 P.2d at 892.

If this court were free to determine the Statute of Limitations as a matter of social policy, there are those who would think it enlightened to have a longer statute than one year. There are many others who would see nothing enlightened in leaving conscientious physicians and psychiatrists vulnerable for a long period to the dissatisfied complaints of those they had tried to help. But this court is not free to make up its own period of limitations. We are bound by California law. *Guaranty Trust Co. v. York,* 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). The court disregards the controlling statute and the controlling California cases.