955 F.2d 1304
 NEVADA POWER CO., a Nevada corporation, Plaintiff-Appellant,
v.
MONSANTO COMPANY, a foreign corporation; General Electric
Corporation, a foreign corporation; and Does I
through XXV, inclusive, Defendants-Appellees.
 No. 90-16179.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 10, 1991.
Decided Feb. 5, 1992.
As Amended on Denial of Rehearing
and Rehearing En Banc
April 14, 1992.
 
 Paul Merrell and Charles H. McCrea, Bloomington, Ind., for plaintiff-appellant.
 Bruce A. Featherstone, Kirkland & Ellis, Denver, Colo., for Monsanto.
 Jeffrey Klein, Weil, Gotshal & Manger, New York City, for Westinghouse.
 John Thorndal, Backus, Maupin & Armstrong, Las Vegas, Nev., for Monsanto & Westinghouse.
 Appeal from the United States District Court for the District of Nevada.
 Before SKOPIL, PREGERSON and O'SCANNLAIN, Circuit Judges.
 O'SCANNLAIN, Circuit Judge:
 
 
 1
 Nevada Power seeks to recover the costs of replacing electrical generating equipment that contained polychlorinated biphenyls ("PCB's"). We must determine whether Nevada Power's claims for fraud and failure to warn against its vendors are time-barred, and whether Nevada Power has stated a claim for implied equitable indemnification.
 
 
 2
 * During the 1960's and 1970's Nevada Power purchased electrical equipment from General Electric and Westinghouse. Much of that equipment contained PCB's as a cooling agent. Monsanto was the supplier of PCB's to General Electric and Westinghouse during this period.
 
 
 3
 In the early 1970's, Congress began to investigate the dangers to humans of exposure to PCB's. In 1976, Congress passed the Toxic Substances Control Act, which, inter alia, outlawed the manufacture, sale or distribution of PCB's unless used in a "totally enclosed" setting. See 15 U.S.C. § 2605(e)(2). The Environmental Protection Agency ("EPA") promulgated regulations pursuant to this act, which permitted the use of PCB's in most electrical equipment, because such use was found by the EPA to be "totally enclosed," but the District of Columbia Circuit struck down these regulations as unsupported by substantial evidence. See Environmental Defense Fund, Inc. v. EPA, 636 F.2d 1267, 1286 (D.C.Cir.1980). In 1982, the EPA issued new regulations allowing electrical equipment containing PCB's to be used only in restricted access areas, and in 1985, the EPA ordered more restrictions on such equipment. See 40 C.F.R. § 761.30 (1990).
 
 
 4
 As early as the early 1970's, the then-chairman of Nevada Power became aware of the dangers of PCB's. In 1976, Nevada Power's safety director sent a memorandum to all company personnel discussing the hazards of PCB exposure, and in 1979 he began giving lectures on this subject. Also in that year, Nevada Power issued a company manual on the dangers of PCB's. During 1978 and 1979, Nevada Power also began a program of removing equipment using PCB's from service before its useful life had been completed.
 
 
 5
 Nevada Power filed suit in Nevada state court on July 7, 1989. Nevada Power alleged, inter alia, that General Electric, Monsanto, and Westinghouse (the "Manufacturers") had knowledge of the dangers of PCB's in the 1960's and 1970's when they sold Nevada Power equipment with PCB's, but represented to Nevada Power that such equipment was safe. Nevada Power sought damages from the Manufacturers under theories of fraud and misrepresentation, failure to warn (collectively the "fraud claims"), and implied equitable indemnity.[1] Nevada Power alleged that although it was aware of the dangers of PCB's by 1979, it only learned in 1988 that the Manufacturers had willfully misrepresented their knowledge about PCB's when they sold equipment to Nevada Power in the 1960's and 1970's. That is, Nevada Power contends that although it realized by 1979 that the Manufacturers' representations in the 1960's and early 1970's about the safety of PCB's had been false, it was only in 1988 that Nevada Power discovered that such false statements had been made intentionally by the Manufacturers, and not out of ignorance.
 
 
 6
 The Manufacturers removed the case to federal court based on diversity of citizenship, and filed a motion for summary judgment, contending that Nevada Power's claims were barred by the applicable statutes of limitations. The district court granted the Manufacturers' motion, concluding that all of Nevada Power's claims were time-barred, and further that Nevada Power had failed to state a claim for equitable indemnity. Nevada Power timely filed notice of appeal.
 
 II
 
 7
 This matter was before the district court under its diversity jurisdiction, and hence state substantive law applies. See Erie Railroad v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Specifically, federal courts exercising diversity jurisdiction are to use state statutes of limitation. West v. Conrail, 481 U.S. 35, 39 n. 4, 107 S.Ct. 1538, 1541 n. 4, 95 L.Ed.2d 32 (1987). The Nevada Supreme Court is controlling authority on questions of Nevada law. See Commissioner v. Bosch, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967).
 
 
 8
 As in questions of federal law, a district court's interpretation of state law is reviewed de novo. See In re McLinn, 739 F.2d 1395, 1397 (9th Cir.1984) (en banc) (abandoning prior rule of "a deferential standard of review to a district judge's construction of the law of the state in which he or she sits"). A grant of summary judgment presents an issue of law reviewed de novo. Kruso v. International Tel. & Tel., 872 F.2d 1416, 1421 (9th Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990). In determining whether any genuine issue of material fact exists, this court must view the evidence in the light most favorable to the nonmoving party, here Nevada Power. Tzung v. State Farm Fire & Casualty Co., 873 F.2d 1338, 1339-40 (9th Cir.1989).
 
 III
 
 9
 * Nevada Power contends that its fraud and failure to warn claims are not barred by the statute of limitations. There is no disagreement that a three-year statute of limitations applies the fraud claim. See Nev.Rev.Stat. § 11.190, subd. 3(d) (1989) (actions for "fraud or mistake" must commence within 3 years). Such actions are "deemed to accrue upon the discovery by the aggrieved party of the facts constituting the fraud or mistake." Id. The Nevada Supreme Court, however, has interpreted this statute to mean not that an action in fraud accrues only when the plaintiff has all the facts needed to constitute a fraud claim, but rather that "the statute of limitation commence[s] to run from the date of the discovery of facts which in the exercise of proper diligence would have enabled the plaintiff to learn of the fraud." Howard v. Howard, 69 Nev. 12, 239 P.2d 584, 589 (1952). Accord Sierra Pacific Power Co. v. Nye, 80 Nev. 88, 389 P.2d 387, 390 (1964) ("mere ignorance of the existence of ... the facts which constitute the cause will not postpone the operation of the statute of limitations ... if the facts may be ascertained by inquiry or diligence").
 
 
 10
 The parties also agree that section 11.220 of the Nevada Revised Statutes applies to the failure to warn claim. The Supreme Court of Nevada has expressly held that "the term 'accrued,' as used in NRS 11.220, incorporates the same 'diligent discovery' rule that is present in NRS 11.190(3)." Oak Grove Investors v. Bell & Gossett Co., 99 Nev. 616, 668 P.2d 1075, 1079 (1983); accord Tahoe Village Homeowners Ass'n v. Douglas Cty., 106 Nev. 660, 799 P.2d 556, 558 (1990). Thus, as with the fraud claim, the failure to warn action accrues " '[w]hen the plaintiff knew or in the exercise of proper diligence should have known of the facts constituting the elements of his cause of action.' " Oak Grove, 668 P.2d at 1079.
 
 
 11
 Nevada Power filed suit on July 7, 1989. Hence if its cause of action accrued before July 7, 1986, its action is barred. The uncontested facts are that Nevada Power knew of the dangers of PCB's no later than 1979, but that it only discovered in 1988 that the Manufacturers' misrepresentations to it were intentional. Between 1979 and 1988, Nevada Power apparently did not investigate the possibility of fraud by the Manufacturers.
 
 
 12
 Nevada Power contends that between 1979 and 1988, although it knew that the Manufacturers' representations had been false, it had no reason to believe that such misrepresentations were anything other than innocent mistakes caused by the general lack of scientific understanding during the 1960's and early 1970's of the effects on humans of PCB exposure. In 1988, Nevada Power discovered internal documents of the Manufacturers which Nevada Power contends show that the Manufacturers' understanding of the dangers of PCB's in the 1960's and early 1970's was much more advanced than the general state of knowledge in the scientific community. Hence, Nevada Power argues that only in 1988 did it discover the fact of the Manufacturers' willful state of mind in making misrepresentations about the safety of PCB's.
 
 
 13
 The Manufacturers argue that Nevada Power's action accrued no later than 1979, when it concededly knew of the dangers of PCB's. The falsity of a representation is only one of the facts that make up a fraud or failure to warn claim, however. One of the facts constituting a fraud or failure to warn claim is the defendant's state of mind. Only if the defendant's misrepresentation is intentional has the defendant acted fraudulently. See Lubbe v. Barba, 91 Nev. 596, 540 P.2d 115, 117 (1975). Similarly, liability for failure to warn cannot arise where the defendant did not reasonably know of the hazard. See Oak Grove, 668 P.2d at 1080.
 
 
 14
 Thus whether Nevada Power's suit was timely turns on whether its knowledge of the dangers of PCB's in 1979 was sufficient that, with proper diligence, it could have uncovered the rest of the facts necessary to constitute a fraud claim or failure to warn. Under federal law, this kind of determination is generally inappropriate for resolution on summary judgment.[2] In determining when an action has accrued under a discovery-based statute of limitations, "[t]he question of when [the alleged wrongdoing] was or should have been discovered is a question of fact. It may be decided as a matter of law only when uncontroverted evidence irrefutably demonstrates plaintiff discovered or should have discovered the fraudulent conduct." Mosesian v. Peat, Marwick, Mitchell & Co., 727 F.2d 873, 877 (9th Cir.), cert. denied, 469 U.S. 932, 105 S.Ct. 329, 83 L.Ed.2d 265 (1984) (internal citations and quotations omitted). "Where the cause of action was belatedly discovered, the issue whether the plaintiff exercised reasonable diligence is a question of fact." Timmel v. Moss, 803 F.2d 519, 521 (9th Cir.1986).
 
 
 15
 In a case quite similar to the one before us, the defendant installed an inadequate computer system in the plaintiff's office. See Sierra Diesel Injection Serv. v. Burroughs Corp. (Sierra Diesel I), 648 F.Supp. 1148, 1149 (D.Nev.1986). As in the instant case, the plaintiff knew early on that the defendant's representations about the equipment made at the time of sale had been inaccurate. Id. at 1151. The question faced by the court was whether, under the Nevada limitations rule, such knowledge was sufficient that, with proper diligence, the plaintiff should have discovered that such misrepresentations were not innocent mistakes but willful fraud. The court stated that "the question of what constitutes sufficient knowledge to place a party under an affirmative duty to discover the fraud or mistake is normally a jury question." Sierra Diesel Injection Serv. v. Burroughs Corp. (Sierra Diesel II), 651 F.Supp. 1371, 1373 (D.Nev.1987) (denying motion to reconsider Sierra Diesel I ).
 
 
 16
 The nonmovant, here Nevada Power, is entitled to have inferences drawn from the evidence in the light most favorable to it on a motion for summary judgment. Tzung, 873 F.2d at 1339-40. One reasonable inference from the facts is that, although Nevada Power knew of the dangers of PCB's by 1979, it had no reason to think that the Manufacturers were any less in the dark about such dangers than the government and scientific community generally were in the 1960's. Between the 1960's and late 1970's the level of knowledge of scientists and the government regarding PCB's increased dramatically. Before its 1988 discoveries, Nevada Power may have plausibly believed that the Manufacturers' knowledge had similarly increased during the 1960's and 1970's, and that their earlier representations, while clearly false given the knowledge base today, were innocent mistakes rather than part of the willful cover-up that Nevada Power now alleges.
 
 
 17
 Very recently, this court has reaffirmed that under federal law, " 'when the plaintiff discovered or could have discovered the fraud with the exercise of reasonable diligence ... is usually a question for the trier of fact.' " General Bedding Corp. v. Echevarria, 947 F.2d 1395, 1397 n. 2 (9th Cir.1991).
 
 
 18
 "Because our precedent dictates that the question of notice of fraud is for the trier of fact, the party seeking summary disposition has an extremely difficult burden to show that there exists no issue of material fact regarding notice." SEC v. Seaboard Corp., 677 F.2d 1301, 1309-10 (9th Cir.1982). We conclude that such burden has not been met here.
 
 B
 
 19
 In the alternative, the Manufacturers contend that even if the facts of a fraud claim could not have been uncovered through proper diligence by Nevada Power, a per se rule should apply barring fraud claims whenever a negligence claim based on the same incident would be barred. Since Nevada Power has conceded that its strict liability and negligence claims connected with the sale of the PCB equipment are barred by the statute of limitations, if the per se rule urged by the Manufacturers were adopted, Nevada Power's fraud claims would be barred as a matter of law, despite the existence of a genuine issue of material fact regarding the "proper diligence" rule.
 
 
 20
 The Manufacturers argue that "once a plaintiff has a suspicion of some wrongdoing, the statute of limitations begins to run on all claims relating to that wrongdoing, including fraud--regardless of whether the plaintiff has knowledge of the facts supporting a particular theory of action." They provide no Nevada authority for this proposition, but cite an Iowa case that does apparently hold that the statute of limitations begins to run on a fraud claim as soon as a party has facts sufficient to make out a strict liability or negligence claim regarding the same transaction. See Sparks v. Metalcraft, Inc., 408 N.W.2d 347, 352 (Iowa 1987). But that court added that "[o]ne exception to this holding might be a fraudulent concealment by the defendant resulting in a claimant's failure to discover facts supporting a legal theory of action." Id. at 352-53. Since Nevada Power indeed alleges just such concealment here, the persuasiveness of this case, even as noncontrolling authority, is weak.
 
 
 21
 It would appear that Nevada case law has carved out an exception to the statutory limitations rule where, although the party does not know all the facts constituting his cause of action, he could discover such facts through the exercise of proper diligence. See Howard, 239 P.2d at 589. Such rule might apply where the party knows facts sufficient to make out a negligence claim. That is, the facts constituting the negligence claim might be enough that, with proper diligence, the facts showing willfulness, and hence a fraud claim, would come out. In that situation, of course, the Nevada courts would apply their well settled rule that at the time the plaintiff "in the exercise of proper diligence should have known of the facts constituting the elements of his cause of action," the statute begins to run. See Oak Grove, 668 P.2d at 1079.
 
 
 22
 We see no indication that the Nevada Supreme Court would go further and, as the Manufacturers urge, adopt a per se rule that whenever the facts of a negligence claim are present, the statute begins to run on fraud actions regardless of whether the facts of such fraud could be discovered through proper diligence. It may be that in most cases where the facts of a negligence claim are known, the "proper diligence" rule would start the limitations period running. But in those cases where, even with knowledge of the facts of a negligence claim, proper diligence could not uncover the facts regarding state of mind needed for a fraud claim, it would be unduly harsh and inequitable to hold that the fraud action always accrues at the time of the negligence action. We are not persuaded that the Nevada Supreme Court would adopt such a rule.
 
 IV
 
 23
 The district court rejected Nevada Power's claim for implied equitable indemnity against the Manufacturers because under Nevada law, the indemnitee and the indemnitor must have "common liability." The court noted that the EPA regulations impose no liability on the Manufacturers for their acts of supplying equipment to Nevada Power twenty or more years ago. Only current use or manufacture of PCB equipment runs afoul of the EPA regulations, and hence no liability common to both Nevada Power and the Manufacturers exists here.
 
 
 24
 The Nevada Supreme Court has spoken recently and clearly that under Nevada law, "[t]he right of indemnity rests upon a difference between the ... liability of two persons, each of whom is made responsible by the law to an injured party." Black & Decker, Inc. v. Essex Group, 105 Nev. 344, 775 P.2d 698, 699 (1989) (emphasis added). As Judge Learned Hand has stated, it is an essential prerequisite for the existence of indemnification liability that, regarding the indemnitor and the indemnitee, "both parties are liable to the same person for the joint wrong." Santisteven v. Dow Chemical Co., 506 F.2d 1216, 1219 n. 10 (9th Cir.1974) (quoting Slattery v. Marra Bros., 186 F.2d 134, 139 (2d Cir.), cert. denied, 341 U.S. 915, 71 S.Ct. 736, 95 L.Ed. 1351 (1951)).
 
 
 25
 Nevada Power, in an effort to support its position, cites to authority stating that the indemnitee and the indemnitor need not be joint tortfeasors. See Hydro-Air Equip. v. Hyatt Corp., 852 F.2d 403, 405 (9th Cir.1988) (interpreting Nevada law). But this misses the point. Nobody has claimed that Nevada Power and the Manufacturers must be joint tortfeasors. Rather, the Nevada Supreme Court has stated that for an indemnity action to arise, there must be a "legal obligation owed by each of the wrongdoers to the injured person." Black & Decker, 775 P.2d at 699.
 
 
 26
 Even accepting, arguendo, Nevada Power's contention that the EPA is an "injured person," only Nevada Power has a legal obligation to the EPA with respect to the electrical equipment the Manufacturers sold it. The Manufacturers have no obligations or liabilities to the EPA connected with equipment they sold in the 1960's and early 1970's. No common liability exists here.
 
 V
 
 27
 We affirm the district court's grant of summary judgment for the Manufacturers on Nevada Power's implied equitable indemnity claim. As Nevada Power has expressly abandoned its claims in implied warranty, strict products liability, negligence, and nuisance, summary judgment for the Manufacturers is affirmed as to those claims. We reverse and remand to the district court for further proceedings on the question of whether Nevada Power's fraud and failure to warn claims are barred by the Nevada statute of limitations.
 
 
 28
 The parties will bear their own costs on this appeal.
 
 
 29
 AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
 
 
 30
 SKOPIL, Circuit Judge, concurring in part, dissenting in part:
 
 
 31
 I agree that summary judgment was properly entered on Nevada Power's implied equitable indemnity claim. I also agree that the implied warranty, strict products liability, negligence and nuisance claims have been abandoned. Accordingly, I concur in the decision to affirm the district court regarding those issues. I disagree, however, that Nevada Power's fraud and failure to warn claims are not subject to summary judgment on statute of limitations grounds. Therefore, I dissent from the majority's decision to reverse and remand.
 
 
 32
 In my view, the statutes of limitations began to run in the 1970's when Nevada Power admittedly knew that PCB's were hazardous. At that time, Nevada Power knew that Monsanto's representations that PCB's are safe had been false and that it was harmed by those representations. Because those facts are undisputed, no genuine issue of material fact exists to preclude summary judgment. The statutes of limitation expired long before Nevada filed its complaint in 1989, and the district court properly granted Monsanto summary judgment.
 
 
 33
 Under Nevada law, "the statute of limitation commence[s] to run from the date of the discovery of facts which in the exercise of proper diligence would have enabled the plaintiff to learn of the fraud." Howard v. Howard, 69 Nev. 12, 239 P.2d 584, 589 (1952) (emphasis added). A plaintiff must establish "facts showing that she was not negligent in failing to make the discovery sooner and that she had no actual nor presumptive knowledge of facts sufficient to put her on inquiry." Id. 239 P.2d at 588-89. In Howard, the plaintiff sought to set aside a divorce decree, alleging it was based on her former husband's fraudulent affidavit for publication of summons. The Nevada Supreme Court held that the limitation period began to run when she discovered that the court had dissolved her marriage without notifying her even though her husband had known her address. Id. at 589.
 
 
 34
 Howard is analogous to this case. The plaintiff in Howard knew she had been harmed by her former husband when she learned of the divorce. Certainly, she did not have actual knowledge that her former husband had acted with a fraudulent intent. Nevertheless, the court held that she had a duty to inquire why she had not been notified. The Nevada court rejected her contention that the period was tolled until she discovered the false affidavit. Id.
 
 
 35
 The holding in Howard is consistent with decisions in other jurisdictions. In a case almost identical to the one before us, the Sixth Circuit held that the statute of limitations began to run as a matter of law when the plaintiffs became aware of the hazards of PCB's. Elec. Power Bd. v. Monsanto Co., 879 F.2d 1368 (6th Cir.1989), cert. denied, 493 U.S. 1022, 110 S.Ct. 724, 107 L.Ed.2d 743 (1990). The court there found it irrelevant that, unbeknownst to the plaintiffs, Monsanto allegedly had been fraudulently concealing the dangers of PCB's. Id. at 1378. The court disposed of that argument by reiterating that despite any fraud the plaintiffs "knew or should have known of the hazards of ... PCBs ... at least four years before their suit was filed." Id.
 
 
 36
 The Tenth Circuit also has held that the limitation period in a fraud action begins to run, as a matter of law, when the plaintiff knows that the defendant's representations were false. Jones v. Ford Motor Co., 599 F.2d 394, 399 (10th Cir.1979). Moreover, the court later expressly rejected the notion that the limitation period is tolled until the plaintiff learns that the defendant's misrepresentations were intentional. Ohio v. Peterson, 651 F.2d 687, 695 (10th Cir.), cert. denied, 454 U.S. 895, 102 S.Ct. 392, 70 L.Ed.2d 209 (1981). The court stated:
 
 
 37
 "The probability of [the defendant's] participation in the fraudulent transaction started the statute running as to him, even though Ohio had no proof of scienter. Although scienter is a necessary element of a § 10(b) private action, in many cases scienter will emerge only as an inference from the facts before the jury. This circumstance cannot be used as a basis for emasculating the statute of limitations."
 
 
 38
 Id. (internal citation omitted).
 
 
 39
 The majority here concludes that the district court could not decide this issue on summary judgment because whether Nevada Power should have known of the fraud or was put on inquiry notice is a question of fact. The majority states the law too broadly. In most fraud cases, that is a question of fact because ordinarily the parties dispute when the plaintiff realized the defendant's representations were false. See, e.g., Woods v. Label Inv. Corp., 107 Nev. 419, 812 P.2d 1293, 1297 (1991); Millspaugh v. Millspaugh, 96 Nev. 446, 611 P.2d 201, 202 (1980). Where there is no genuine issue as to when the plaintiff learned that the defendant's representations were false, however, a defendant may be entitled to judgment as a matter of law. See Jablon v. Dean Witter & Co., 614 F.2d 677, 682 (9th Cir.1980) (upholding dismissal based on the statute of limitations when the plaintiff admittedly knew the defendant's representations were false more than three years before the action). Here, Nevada Power concedes that it knew in the 1970's that Monsanto's representations had been false, and Nevada law requires a plaintiff in that position to inquire whether the representations were fraudulent. See Howard, 239 P.2d at 589. No genuine issue of material fact exists.
 
 
 40
 The majority's solution of permitting the jury to decide whether the claims are barred robs defendants of much of the protection limitation rules are intended to provide. The rules are grounded on twin policies of protecting defendants from defending stale claims and promoting repose. Nevada State Bank v. Jamison Fam. Part., 106 Nev. 792, 801 P.2d 1377, 1381 (1990); Ohio, 651 F.2d at 694. Both policies are eroded by a rule that necessarily makes the statute of limitations a jury question. See Ohio, 651 F.2d at 694. Unless the court bifurcates the trial, both the defendant and the court will be burdened by the trial of a stale claim, even if the defendant is vindicated. Id. Furthermore, any repose from the statute would be illusory if the defendant still faces "the cost and vexation of protracted litigation and the uncertainty of contingent liability." Id.
 
 
 41
 I would affirm the district court.
 
 
 
 [1]
 Nevada Power also filed claims under theories of implied warranty, strict products liability, negligence and nuisance, but does not pursue such claims on appeal
 
 
 [2]
 "In diversity cases, whether an issue is one of law for the court to decide or one of fact for the jury to determine is governed by federal law." Deland v. Old Republic Life Ins. Co., 758 F.2d 1331, 1335 (9th Cir.1985) (citing Gillespie v. Travelers Ins. Co., 486 F.2d 281, 283 n. 1 (9th Cir.1973)). And "[a]lthough [state] law controls the substantive issues in this case, the standards for determining whether summary judgment [is] appropriate call for application of federal law." Sullivan v. Massachusetts Mutual Life Ins. Co., 611 F.2d 261, 263-64 (9th Cir.1979). In any event, although we apply federal law here, Nevada law is in accord. See Oak Grove Investors v. Bell & Gossett Co., 99 Nev. 616, 668 P.2d 1075, 1079 (1983) ("When the plaintiff knew or in the exercise of proper diligence should have known of the facts constituting the elements of his cause of action is a question of fact for the trier of fact.")