19 F.3d 27
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
GREAT WESTERN CAPITAL CORPORATION, Plaintiff-Appellant,
v.
INGERSOLL-RAND FINANCIAL CORPORATION; Concord Commercial
Corporation, as corporate successor in interest of
Ingersoll-Rand Financial Corporation,
Defendants-Appellees. (Two Cases)
 Nos. 92-55746, 92-56089.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 9, 1993.
Decided Feb. 28, 1994.
 
 Before: TANG, D.W. NELSON, and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 The issue before us in this appeal from a summary judgment is whether this action for breach of contract, misrepresentation, and breach of fiduciary duties is time-barred.
 
 
 3
 On May 31, 1985, the appellee, the Ingersoll-Rand Financial Corporation ("Ingersoll-Rand"), entered into a Participation Agreement with the appellant, Great Western Capital Corporation ("Great Western"), in which Ingersoll-Rand sold certain loans to Great Western and agreed to service those loans and to act as Great Western's fiduciary. Before it entered into the agreement, the evidence indicates that Ingersoll-Rand represented to Great Western that it had performed some due diligence and spot-checked individual investors on the loans. The evidence indicates that, contrary to Ingersoll-Rand's representation, no due diligence was performed.
 
 
 4
 Other evidence indicates that, while Ingersoll-Rand was servicing the loans and acting as Great Western's fiduciary, Ingersoll-Rand knew that certain of the loans had fraudulent or bogus investors and that the sureties were insolvent. Ingersoll-Rand did not notify Great Western of this fraud until May 21, 1986, although the evidence is that it discovered the fraud as early as December of 1985, when it began a process to verify whether the named investors actually knew of the loans.
 
 
 5
 Ingersoll-Rand argues that because it notified Great Western that the loans were fraudulent on May 21, 1986, Great Western was on notice the loans were not as they had been represented. According to Ingersoll-Rand, Great Western had a duty to investigate at that point and therefore, Great Western's claim is time-barred.
 
 
 6
 Whether Great Western's action was timely turns on when its knowledge was such that, with proper diligence, it could have uncovered Ingersoll-Rand's misrepresentation concerning due diligence and Ingersoll-Rand's prior knowledge of the fraud.[1] "Under federal law, this kind of determination is generally inappropriate for resolution on summary judgment."[2] Nevada Power Co. v. Monsanto Co., 955 F.2d 1304, 1307 (9th Cir.1992). "In determining when an action has accrued under a discovery-based statute of limitations, '[t]he question of when [the alleged wrongdoing] was or should have been discovered is a question of fact. It may be decided as a matter of law only when uncontroverted evidence irrefutably demonstrates plaintiff discovered or should have discovered the fraudulent conduct.' " Id. (citation omitted).
 
 
 7
 We have held that "[w]here the cause of action was belatedly discovered, the issue whether the plaintiff exercised reasonable diligence is a question of fact." Timmel v. Moss, 803 F.2d 519, 521 (9th Cir.1986). Even where there has been a discovery of some fraud, what a reasonably prudent person should do about it is a jury question. General Bedding Corp. v. Echevarria, 947 F.2d 1395, 1397 (9th Cir.1991); Briskin v. Ernst & Ernst, 589 F.2d 1363, 1368-69 (9th Cir.1978) ("It is possible that a reasonably prudent person would not suspect written representations to be false even after discovering the falsity of some oral representations.").
 
 
 8
 Great Western presents deposition evidence that Ingersoll-Rand "lulled" it concerning Ingersoll-Rand's prior knowledge of the fraud by telling Great Western representatives Moore and Montmorency that the portfolio was generally performing; that Ingersoll-Rand was working with the loan's general partner to straighten out the situation; that the general partner was going to make the payment; and that a claim was filed with the surety. The depositions show that: (1) Lynch of Ingersoll-Rand told Moore after the June 3, 1986 meeting between Ingersoll-Rand and Great Western that a payment of $533,437.50 had been received for one of the problem loans, Excerpt of Record (ER) 1, at 143-44; (2) Salloway of Great Western stated that Ingersoll-Rand informed Great Western that the general partner of one of the loans would cover any problems arising from the investor notes, ER 1, at 218, lines 7-10; (3) Montmorency explained that the purpose of the June 3, 1986 visit to the Ingersoll-Rand offices was not to review how Ingersoll-Rand had done its loan approval in the first place, but rather to determine how the debtors were paying and to look at the payment records, ER 1 at 159; (4) Montmorency explained that she examined Ingersoll-Rand's red binders with the disbursement/payment activities, cancelled checks, and tracking files for claims, ER 1 at 168; (5) Montmorency said that Joe Stokan of Ingersoll-Rand said the general partner would make the payment that was due, that a claim was filed against the surety, and that "the situation would be resolved one way or the other," ER 1 at 162; (6) Montmorency explained that she was told by Joe Stokan that Ingersoll-Rand believed, but did not know if in fact the notes were fraudulently signed, ER 1 at 177; and (7) Montmorency stated: "When I was at Ingersoll's offices, it was conveyed to me that the situation was under control, and there was a relative sense of calm about DFF-5." ER 1 at 173-74.
 
 
 9
 The evidence indicates that when Ingersoll-Rand and Great Western were negotiating the purchase and sale of the loans in 1985, Ingersoll-Rand represented to Great Western that it had performed some due diligence and spot-checked individual investors. With respect to its misrepresentation claim, Great Western presents deposition evidence that Ingersoll-Rand suggested it had done "due diligence" and approved the criteria used by the sureties when it approved the loans in the first place: (1) Montmorency stated under oath that Hirshfeld of Ingersoll-Rand told her that Ingersoll-Rand itself did some due diligence, ER 1 at 153-54; (2) Montmorency stated that Ingersoll-Rand also told her it approved the criteria used by the insurance companies to do due diligence, ER 1 at 155, lines 17-22; and (3) Salloway stated that Ingersoll-Rand represented to him that they had done due diligence in response to his specific question. ER 1 at 208-09.
 
 
 10
 As the non-moving party in a summary judgment motion, Great Western was entitled to have inferences drawn from the evidence in the light most favorable to it. See Nevada Power, 955 F.2d at 1308. It could reasonably be inferred that Great Western did not suspect Ingersoll-Rand's alleged misrepresentation as to due diligence or the extent of Ingersoll-Rand's prior knowledge of the fraudulent loans because Ingersoll-Rand took the position that both companies were victims of fraud and because Ingersoll-Rand gave assurances the problem was controllable. "Under California law, the statute of limitations may be tolled by a broker reassuring his client on concerns relevant to the possible misrepresentation." Vucinich v. Paine, Webber, Jackson & Curtis, Inc., 739 F.2d 1434, 1436 (9th Cir.1984).
 
 
 11
 "Because our precedent dictates that the question of notice of fraud is for the trier of fact, the party seeking summary disposition has an extremely difficult burden to show that there exists no issue of material fact regarding notice." SEC v. Seaboard Corp., 677 F.2d 1301, 1309-10 (9th Cir.1982). We conclude that the burden has not been met. The district court's conclusion that Great Western did not conduct itself as a reasonably prudent person was a question for the jury in view of Great Western's evidence that Ingersoll-Rand represented that it had taken care of due diligence and that the problem loans could be handled in Ingersoll-Rand's capacity as fiduciary. "[I]t is necessary to place before a factfinder the conflicting recollections of facts and the conflicting inferences to be drawn from such facts.... The conflicting assertions ... about what a reasonable investor would have known present[ ] issues of the type usually reserved for juries." Briskin, 589 F.2d at 1369.
 
 
 12
 We also reverse the award of attorneys' fees to Ingersoll-Rand. Where genuine issues remain for trial, the attorneys' fee issue becomes moot.
 
 
 13
 REVERSED AND REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The parties agree that the applicable statutes of limitation are those of the forum state, California. While various California statutes apply to Great Western's several claims for relief, the longest potential statute applicable to any of those claims is California Code of Civil Procedure Sec. 337.3, which provides that an action based upon the rescission of a contract in writing (Great Western's Fourth through Eighth Claims for Relief) must be brought within four years of the date upon which the facts that entitle the aggrieved party to rescind occurred. Where the ground of rescission is fraud or mistake, the time begins to run from the date of discovery of the fraud or mistake. If Great Western's rescission claims are barred, so are its other claims, since none of the other statutes applicable to any of Great Western's claims are longer than the rescission statute
 Therefore, if the extent of the fraud that occurred here should have been discovered by Great Western in June of 1986, an action would have had to be filed by June of 1990 to come within the four year statute of limitation. The complaint was not filed until April 19, 1991.
 
 
 [2]
 "In diversity cases, whether an issue is one of law for the court to decide or one of fact for the jury to determine is governed by federal law." Deland v. Old Republic Life Ins. Co., 758 F.2d 1331, 1335 (9th Cir.1985)